## A03A0280. HANEY v. THE STATE.
## A03A0281. LUCAS v. THE STATE.
### (581 SE2d 626)

MIKELL, Judge.

A jury convicted co-defendants Richard Haney and Joel Manford Lucas of burglary and theft by receiving. They were each sentenced to ten years confinement. Both Haney and Lucas filed motions for a new trial, which the court denied. They filed the present appeals, which we consider together because they raise a number of common arguments. We affirm the convictions.

Viewed in the light most favorable to the jury's verdict, the record shows that on the morning of October 12, 2000, Crystal Freeman, who was home alone, received several "prank" telephone calls, during which a male caller asked to speak to her fiancé, Robert Huff, and then hung up when Freeman asked who was calling. According to Freeman, the caller referred to Huff as "Robbie," which was Freeman's nickname for him. Shortly after the calls ceased, Freeman observed a "grayish-blue" Dodge pickup truck with a tow dolly attached and a gray Buick automobile drive past her home at least twice. Freeman recognized the driver of the Buick as Kim Tilley, the wife of Huff's brother. Freeman testified that she saw two men with gray hair in the truck. Next, the truck pulled into Freeman's driveway, and one of the men got out. He walked around to the rear of the home and then returned to the truck and left the premises.

After the truck and Buick drove away, Freeman drove to a nearby store. She returned home approximately ten minutes later. There, she saw the Dodge truck with the same occupants and the Buick driven by Tilley leaving her residence. Freeman's two dogs, who had been inside the home when she left, were in the yard, and her back door had been pried open. Once inside, Freeman discovered that a grandfather clock had been removed and that other possessions had been strewn about. She immediately called 911 to report the incident.

Jackson County Sheriff's Deputy Chris Poe responded to the call between 9:00 and 9:30 a.m. Freeman relayed the events of that morning to Deputy Poe and told him that she had seen the truck parked in the yard of Donna Fowler, who operated a pawn business out of her residence. Freeman and Huff had been to Fowler's home in connection with a car they had pawned. Deputy Poe broadcast descriptions of the Dodge truck and the Buick, as well as their possible location, over the police radio.

Sergeant Mike McEver heard the bulletin at approximately 10:07 a.m. and proceeded to Fowler's residence. There, he observed the Buick and the Dodge. He also saw Tilley and two men fitting Freeman's description of the occupants of the truck, who were later

identified as Lucas and Haney. According to Sergeant McEver, Lucas and Haney departed in a blue Thunderbird. The officer noticed what appeared to be Freeman's stolen grandfather clock in the Thunderbird and notified other officers of the car's location by radio.

Moments later, Deputy Tim Keefe stopped the Thunderbird near Fowler's home. Lucas was driving, and Haney was a passenger. Investigator Steve Smith arrived at the scene shortly thereafter and informed Lucas and Haney that their vehicle appeared to contain a recently stolen item. Lucas responded that they found the clock in a dumpster. The two men were arrested and taken to jail. Deputy Poe brought Freeman to the Thunderbird's location, where she identified the grandfather clock and a wolf figurine as having been removed from her home.

Investigator Smith recognized other items in the Thunderbird as having been stolen the day before from Oscar and Amy Weinmeister, whose home was located in the same community as Freeman's. Oscar Weinmeister identified a number of the couple's items in the Thunderbird, including the registry book from their wedding.

According to Investigator Smith, Lucas admitted under oath at a probation revocation hearing that he went to Freeman's residence on the day in question in order to repossess a vehicle on Fowler's behalf.

1. In four related errors, Haney and Lucas challenge the sufficiency of the evidence. Haney argues that the trial court erred in denying his motion for a directed verdict of acquittal on both charges. Lucas argues that the trial court erred in denying his motion for a new trial because his guilty verdict was contrary to law and unsupported by the evidence.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve.

(Citation omitted.) *White v. State*, 250 Ga. App. 783 (552 SE2d 927) (2001). Accord *Pennington v. State*, 254 Ga. App. 837, 838 (564 SE2d 219) (2002), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Applying the above standard to the evidence adduced at trial, we conclude that the evidence was sufficient for a rational trier of fact to find the elements of burglary and theft by receiving beyond a reasonable doubt.

Count 1 of the indictment charged both defendants with the burglary of Freeman's home. OCGA § 16-7-1 (a) provides, in pertinent part: "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another." Count 2 alleged that Haney and Lucas committed theft by receiving stolen property by retaining a book belonging to Amy Weinmeister. That offense takes place when "[a] person . . . receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner." OCGA § 16-8-7 (a).

We conclude that the evidence summarized above authorized the jury to find the defendants guilty of both offenses. OCGA § 24-4-6 provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." See also *Smith v. State*, 257 Ga. 381, 382 (359 SE2d 662) (1987); *Pope v. State*, 240 Ga. App. 803, 804-805 (1) (522 SE2d 291) (1999). "Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury." (Citation omitted.) *Henderson v. State*, 170 Ga. App. 170 (316 SE2d 814) (1984). See also *Harris v. State*, 222 Ga. App. 56, 58 (2) (473 SE2d 229) (1996); *Estep v. State*, 154 Ga. App. 1 (267 SE2d 314) (1980).

2. We reject Haney's argument that his theft by receiving conviction cannot stand based on a fatal variance between the indictment and the evidence and on the fact that Lucas was driving the vehicle in which the stolen book was found. Haney contends that a fatal variance resulted because Amy Weinmeister was the named victim in the indictment, but Oscar, not Amy, identified the stolen property found in the Thunderbird. However, Oscar described and positively identified the wedding guest registry that had been stolen from the home he shared with his wife. He further testified that the registry book, which contained the notation "To Amy and Oscar" and was dated June 12, 1999, had been stolen in October, 2000, and that Amy was his wife. Therefore, the jury could reasonably conclude that the book in Haney and Lucas's possession was the one stolen from Amy Weinmeister. "Absent a variance between the pleadings and the proof resulting in a failure to give sufficient notice of the allegations against an accused or to foreclose the potential for another prosecution against the accused for the same offense, a variance is not fatal." (Citation omitted.) *Spruell v. State*, 217 Ga. App. 150 (1) (456 SE2d 740) (1995).

We likewise reject Haney's argument that his theft by receiving conviction must be reversed because Lucas was driving the Thunder-

bird in which the stolen book was discovered. Generally, mere presence in a car containing stolen property is not sufficient to support a conviction for theft by receiving. See *Patterson v. State*, 159 Ga. App. 290, 294 (283 SE2d 294) (1981). However, in this case, the state presented substantial evidence of Haney's guilt in addition to his presence in the Thunderbird. For instance, there was evidence that he had committed a burglary approximately two hours earlier in the Weinmeisters' neighborhood; that he had been in the presence of his co-defendant, the driver of the car, all morning; that the two men left Fowler's home together after returning from Freeman's home; and that they were also in possession of Freeman's stolen property. Accordingly, the jury could reasonably conclude that Haney was guilty of retaining property which he knew or should have known was stolen. OCGA § 16-8-7 (a).

3. Next, Haney and Lucas argue that the trial court erred in admitting Freeman's in-court identification of them. Prior to trial, both defendants moved to prohibit Freeman from identifying them at trial based on her testimony at Lucas's December 7, 2000, probation revocation hearing that she was unable to identify Lucas and Haney. In response to the defendants' motion in limine, the prosecutor represented to the court that he did not anticipate that Freeman would identify the defendants. The trial court denied the motion. The record does not contain a transcript of the December 7 probation revocation hearing; therefore, we are confined to the record before us in reviewing the trial court's ruling.

On direct examination during the trial, Freeman identified Lucas and Haney as the men she observed in the Dodge truck at her residence. On cross-examination, counsel for Lucas asked Freeman if she recalled testifying at the December 7, 2000, hearing, and she responded affirmatively. Counsel read the following from the hearing transcript:

> The question: . . . Did you have an opportunity to see the people that were in your yard prior to calling the Sheriff's department? Your answer: I seen the vehicle, but I didn't get a good look at the people inside. Question: Did you give a description to the officer as to the driver of the vehicle or anything like that? And your answer was, "No ma'am."

Freeman affirmed that she recalled giving that testimony at the hearing. When counsel asked Freeman at what point she became able to identify Lucas as one of the men in her yard, Freeman responded: "I had seen him get out of the truck and come walking around in my yard." When counsel asked, "again, you were not able to give a description [to the authorities] of who was driving? Simply,

it was two men, as you recall," the trial transcript reveals that Freeman nodded her head affirmatively. Finally, counsel for Lucas propounded the following question to Freeman regarding her inability to describe the defendants to the police: "[J]ust tell me: When did you determine you were able to identify these two as the people that were in your yard, since you couldn't do it October the 12th? When?" Freeman responded: "Well, maybe I was nervous and scared then, and I couldn't really talk. Maybe I've had mixed-up words."

In her cross-examination of Freeman, counsel for Haney asked: "So on December 7th of last year you testified under oath that you would not be able to identify the two people that you saw if you saw them again; correct?" Freeman answered, "[y]es." Freeman went on to testify that she was never asked to identify either defendant in a photographic or live lineup, nor was she asked to identify them at the December 7 hearing.

It is well settled that "[i]t is error to allow testimony concerning a *pre-trial identification* of a defendant if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification." (Emphasis supplied.) *Clark v. State*, 271 Ga. 6, 12 (7) (b) (515 SE2d 155) (1999), citing *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Reid v. State*, 210 Ga. App. 783, 786 (2) (437 SE2d 646) (1993). However, in the case sub judice, there was no pre-trial identification procedure at issue. Rather, the defendants introduced impeachment testimony concerning the victim's failure to make a pre-trial identification. We know of no authority prohibiting an in-court identification when, as here, counsel for both defendants had ample opportunity to impeach the witness and to point out the inconsistencies in her testimony.[1]

4. Both Haney and Lucas contend that the court erred in allowing Oscar Weinmeister to testify regarding stolen property he saw in the Thunderbird that was not listed in the indictment. In addition to the wedding book that formed the basis of the theft by receiving charges, Weinmeister identified a clock, a journal, an oak basket, a jewelry box, and a Venetian glass bowl that had been stolen from his home. The state argued that the complained-of evidence was relevant to demonstrate that the defendants knew or should have known that the wedding book was stolen, because all of the items had presumably been taken in the same burglary. See generally OCGA § 24-2-1.

---

[1] Haney cites *Stovall v. State*, 216 Ga. App. 138, 140 (3) (453 SE2d 110) (1995), but in *Stovall*, this Court merely noted in dicta that the trial court had correctly excluded the in-court identification.

5. Lucas contends that the trial court erred in excusing a juror. The record reveals that a jury was impaneled on June 18, 2001. The next day, prior to the start of the trial, one of the jurors informed the court that he knew the girlfriend of one of the defendants.[2] He stated that he recognized the woman that morning when he saw her with the defendant. The juror asked that he be excused from jury service and represented that he would be uncomfortable sitting on the jury in light of the fact that he had known the woman all of his life.

"Whether to strike a juror for cause is within the discretion of the trial court and the trial court's rulings are proper absent some manifest abuse of discretion." (Citation omitted.) *Greene v. State*, 268 Ga. 47, 50 (485 SE2d 741) (1997). Pretermitting whether the trial court would have been required to excuse the juror for cause on the motion of one of the parties, we cannot conclude that the court's sua sponte ruling amounted to a manifest abuse of discretion. Accordingly, Lucas's argument presents no basis for reversal.

6. Finally, Lucas contends that the trial court erred in instructing the jury as follows:

> If you should find beyond a reasonable doubt that the crime of burglary has been committed as charged in the indictment and certain personal property was stolen as a result of such crime, and if recently thereafter the Defendant should be found in possession of the stolen property, that would be a circumstance along with all of the other evidence from which you may infer guilt as to the charge of burglary as set forth in the indictment if you see fit to do so, unless there should be from the evidence a reasonable explanation of the possession of such property consistent with a plea of innocence. And that is a question solely for you, the jury, to decide.

After defining burglary and theft by receiving stolen property, the court instructed:

> Let me point out, however, that, as to the theft by receiving stolen property charge, unexplained possession of recently stolen goods standing alone will not support an inference of guilt nor authorize a conviction of theft by receiving stolen property.

---

[2] The juror believed that the woman was married to the defendant, but that was not the case. Additionally, it is not clear from the record with which defendant the woman was engaged in a relationship.

Lucas argues that the court's instruction somehow amounted to an improper comment on the evidence in violation of OCGA § 17-8-57. This argument has no merit. The complained-of charges were taken directly from the Council of Superior Court Judges Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2nd ed.), p. 101, and were an accurate statement of the law. We fail to see how they could be construed as an impermissible judicial comment on the evidence.

In summary, we affirm the convictions of both Haney and Lucas. *Judgments affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED APRIL 9, 2003 —
RECONSIDERATION DENIED MAY 6, 2003 — 

*Kathleen J. Anderson*, for appellant (case no. A03A0280).
*N. David Wages*, for appellant (case no. A03A0281).
*Timothy G. Madison*, District Attorney, *Anthony B. Williams*, Assistant District Attorney, for appellee.