A06A2447. ADAMS v. THE STATE.
(640 SE2d 329)

BLACKBURN, Presiding Judge.

Following a jury trial, Roman Adams was convicted of three counts of aggravated assault.[1] In 18 enumerations of error, Adams challenges the sufficiency of the evidence, the constitutionality of the judicial circuit's internal operating procedures, the accuracy of the notices of arraignment, the accuracy of the indictment, and the composition of the grand jury. He further contends that the trial court erred by admitting inadmissible evidence, excluding admissible evidence, failing to provide proper jury charges, allowing prosecutorial misconduct, improperly communicating with the jury, and improperly expressing its opinion regarding the evidence. For the reasons set forth below, we affirm.

1. We first address Adams's contention (found in his eighteenth enumeration of error) that the evidence was insufficient to support his convictions of aggravated assault. "On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [Adams] no longer enjoys a presumption of

---

[10] *Lee v. Precision Balancing &c.*, 134 Ga. App. 762, 764 (216 SE2d 640) (1975).
[1] OCGA § 16-5-21 (a) (2).

innocence." *Berry v. State*.[2] When evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*.[3]

So viewed, the record shows that on October 2, 2005, Tonya Hunt and her three young sons were traveling toward Jasper. Just outside of Jasper, Mrs. Hunt's vehicle approached a black pickup truck, which Adams was driving accompanied by his wife. Mrs. Hunt followed Adams's truck for approximately one mile until Adams, believing that Mrs. Hunt's vehicle was following too closely, picked up his pistol from the front seat and pointed it out the back window of his truck toward Mrs. Hunt's vehicle. Fearing that she and her children were in danger of being shot, Mrs. Hunt drastically slowed to increase the distance between the two vehicles and then called 911 on her cell phone to report the incident. Mrs. Hunt continued to follow Adams, albeit at a much greater distance, and informed the sheriff's deputy who met her several minutes later that Adams's truck had turned onto a nearby residential drive. Shortly thereafter, two sheriff's deputies located Adams and questioned him regarding the incident. Based on the deputies' investigation, a warrant was issued, and Adams was later arrested.

Adams was indicted on four counts of aggravated assault (one for each person in Mrs. Hunt's vehicle), one count of aggressive driving, and three counts of cruelty to children. At trial, Mrs. Hunt and two of her sons testified that Adams pointed the pistol at their vehicle and that, as a consequence, they were in fear of being shot. One of the investigating deputies testified as to his discussions of the incident with the victims and with Adams. Prior to closing arguments, the trial court granted Adams's motion for a directed verdict as to the cruelty to children charges. At the trial's conclusion, the jury acquitted Adams on the aggressive driving charge and on one of the aggravated assault charges and convicted him on the three remaining counts of aggravated assault. This appeal followed.

Adams contends that the evidence was insufficient to support his conviction. "A person commits the offense of simple assault when he or she . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2). "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object,

---

[2] *Berry v. State*, 274 Ga. App. 831 (1) (619 SE2d 339) (2005).

[3] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2).

Here, Mrs. Hunt and two of her sons testified that Adams pointed his gun at their vehicle and that as a result they were in fear of being shot. Given this evidence, a rational trier of fact could have found the essential elements of aggravated assault beyond a reasonable doubt. See *Jefferies v. State.*[4] Whether Adams acted in self-defense was a question for the jury to resolve, and it obviously resolved the question against him. See *Chalvatzis v. State.*[5] Accordingly, the evidence was sufficient to support Adams's convictions.

2. In two separate enumerations of error (one and ten), Adams contends that Internal Operating Procedure 2000-3 of the Appalachian Judicial Circuit, which appoints the district attorney to act as the calendar clerk for criminal matters, is an unconstitutional delegation of judicial power and violates his right to due process of law. He further contends that it was error to arraign him according to this procedure and that therefore the charges against him should have been dismissed. We disagree.

While the separation of powers is fundamental to our constitutional form of government, it does not follow that a complete separation is desirable or was intended. *In re Pending Cases, Augusta Judicial Circuit.*[6] "The three departments of government are not kept wholly separate in the Georgia Constitution. . . . Our Constitution requires a district attorney to perform such other services as shall be required of him by law. Ga. Const., Art. VI, [Sec. VIII, Par. I (d)]." (Punctuation omitted.) Id. at 266. Included among those other services is the requirement that the district attorney "otherwise . . . aid the presiding judge in organizing the courts as he may require." OCGA § 15-18-6 (3). Indeed such aid is contemplated by Uniform Superior Court Rule 30.1, which provides that "[t]he judge, *or the judge's designee*, shall set the time of arraignment unless arraignment is waived either by the defendant or by operation of law." (Emphasis supplied.)

Given that the functions of the district attorney are not exclusively executive, the Internal Operating Procedure 2000-3 of the Appalachian Judicial Circuit, which appoints the district attorney to act as calendar clerk for criminal matters, merely aids the judges in the Appalachian Judicial Circuit in organizing their courts and is not an unconstitutional delegation of judicial powers. Moreover, Adams's

---

[4] *Jefferies v. State*, 267 Ga. App. 694, 698 (3) (600 SE2d 753) (2004).

[5] *Chalvatzis v. State*, 265 Ga. App. 699, 702 (1) (595 SE2d 558) (2004).

[6] *In re Pending Cases, Augusta Judicial Circuit*, 234 Ga. 264, 265 (215 SE2d 473) (1975).

contention that this procedure denied his right to due process by precluding him from challenging the validity of his notice of arraignment is belied by the fact that he filed pre-trial motions regarding that very issue and presented his arguments during a hearing on the matter. Accordingly, it was not error for Adams to be arraigned pursuant to Internal Operating Procedure 2000-3.

3. In his second enumeration of error, Adams contends that the trial court erred in allowing the State to force him to produce the pistol he used in the assault by issuing a subpoena for him to produce the weapon. Adams argues that the subpoena was untimely and that it violated his rights against self-incrimination under the Georgia and U. S. Constitutions.

The pertinent facts are that on June 6, 2006, prior to the start of his trial, Adams moved to quash the State's subpoena demanding that he produce the pistol used in the assault, which subpoena had been served on him the previous day. Specifically, Adams argued that the subpoena was untimely and that it violated his rights against self-incrimination. In response, the State argued, among other things, that the issue was moot in light of the fact that Adams had voluntarily produced the pistol the previous day. The trial court denied Adams's motion as to timeliness, ruling that the subpoena was not untimely but reserved ruling on whether the subpoena violated his rights against self-incrimination. Later that same day, Adams's pistol was admitted into evidence. Adams objected only on the ground that the State had not proven chain of custody, and this objection was overruled.

(a) OCGA § 24-10-25 (a) provides in part that "[i]n all cases under this Code section, the court shall consider whether under the circumstances of each case the subpoena was served within a reasonable time, but in any event not less than 24 hours prior to the time that appearance thereunder was required." Here, however, Adams voluntarily produced the pistol prior to moving to quash the subpoena, and thus has waived any challenge to the subpoena's timeliness. See *Stein v. Cherokee Ins. Co.*[7] Cf. *Eubanks v. Brooks.*[8] Moreover, even if Adams's production of the pistol did not constitute a waiver of the 24-hour notice requirement, his failure to include the subpoena (or any service affidavit) in the record leaves this Court with no means to review his challenge to the subpoena's timeliness. See *Carter v. State.*[9] Accordingly, inasmuch as Adams has not shown by the record that the subpoena was served in an untimely manner, we must

[7] *Stein v. Cherokee Ins. Co.*, 169 Ga. App. 1, 2 (1) (311 SE2d 220) (1983).

[8] *Eubanks v. Brooks*, 139 Ga. App. 166, 168 (227 SE2d 923) (1976).

[9] *Carter v. State*, 161 Ga. App. 734, 736 (2) (288 SE2d 749) (1982).

conclude that the trial court did not err in denying his motion to quash the subpoena pursuant to OCGA § 24-10-25 (a). Cf. *Byron v. State*.[10]

(b) Adams has also waived his contention that the subpoena violated his rights against self-incrimination under the Georgia and U. S. Constitutions. As previously noted, the trial court initially reserved ruling on whether the subpoena demanding the production of Adams's pistol violated his right against self-incrimination. Later, when the State sought to admit the pistol into evidence, Adams objected on the ground that chain of custody had not been proven but did not raise the objection that his rights against self-incrimination were being violated. "An objection on a specific ground or grounds at trial waives any objection to that evidence on other grounds on appeal." (Punctuation omitted.) *Gulley v. State*.[11] Accordingly, Adams's failure to specifically seek a ruling from the trial court on whether admitting the pistol into evidence violated his rights against self-incrimination, and instead his objecting at trial on the ground that the State had not proven chain of custody,[12] constituted a waiver of any objection on the former ground. See *Brock v. State*.[13]

4. Adams claims in his third enumeration of error that the trial court's interruption of his counsel's cross-examination and its repetition of one of the jury charges amounted to improper opinion comments in violation of OCGA § 17-8-57. We disagree. "OCGA § 17-8-57 prohibits a judge in a criminal case from expressing or intimating his or her opinion as to what has or has not been proved or as to the guilt of the accused. To violate this statute, the comments must focus on a disputed issue of fact." *Smith v. State*.[14] "[A] claim of error alleging a violation of OCGA § 17-8-57 is not waived by an attorney's failure to object at trial, if such violation constitutes plain error." (Punctuation omitted.) *Archie v. State*.[15] "A violation of the statute requires a new trial." *Smith*, supra, 275 Ga. App. at 63 (4).

Here, while cross-examining the investigating deputy, Adams's counsel asked, "Do you know why Mr. Adams is accused of four felonies of Aggravated Assault?" Before the deputy could answer, the

---

[10] *Byron v. State*, 229 Ga. App. 795, 799 (6) (495 SE2d 123) (1997).

[11] *Gulley v. State*, 244 Ga. App. 629, 632 (2) (536 SE2d 530) (2000).

[12] Adams does not cite as error the trial court's decision to admit the pistol over his objection that the State had not proven chain of custody but nevertheless argues this issue in his appellate brief. Pretermitting whether Adams has waived appeal of this alleged error, his argument is without merit. "[T]he State was not required to prove a chain of custody of the exhibit, since the gun was a distinct and recognizable physical object which could be identified upon mere observation." (Punctuation omitted.) *Attaway v. State*, 259 Ga. App. 822, 827 (3) (578 SE2d 529) (2003).

[13] *Brock v. State*, 270 Ga. App. 250, 253 (4) (605 SE2d 907) (2004).

[14] *Smith v. State*, 275 Ga. App. 60, 63 (4) (619 SE2d 694) (2005).

[15] *Archie v. State*, 248 Ga. App. 56, 57 (1) (545 SE2d 179) (2001).

trial court interrupted, stating, "Hold on just a second. I think that is irrelevant. The answer is because he got indicted by a grand jury for that." Contrary to Adams's contention, these comments did not amount to a violation of OCGA § 17-8-57, much less plain error. "[T]he complained of comments by the trial court demonstrate authorized attempts to control the conduct of the trial and to guide the defense attorney to ensure a fair trial and the orderly administration of justice." *Mathis v. State.*[16] Furthermore, "[t]he comments were limited in scope, did not involve [Adams's] guilt or innocence, and did not express an opinion on what had or had not been proved." Id. Accordingly, the trial court did not commit plain error.

Adams's contention that the trial court's repetition of one of the jury charges violated OCGA § 17-8-57 is also without merit. While charging the jury on the law of self-defense, the trial court instructed that: "A person is not justified in using force if that person initially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant." A moment later, after realizing that it had not given the complete charge, the court stated:

I'm going to back up and read a few words to you, because I left out about four words. I want to tell you that by doing so, I do not in any way intend or suggest undue emphasis on what I'm reading to you again. I simply left out three words, I believe. I'm going to give you those again. A person is not justified in using force if that person initially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant or was the aggressor.

Given that the charge was repeated solely for the purpose of correcting an unintended omission, and that the corrected charge was an accurate statement of law, the trial court's repetition of the jury instruction on self-defense did not amount to an improper expression of opinion or a comment on the evidence. See *Floyd v. State;*[17] *Haney v. State.*[18] Accordingly, we find no plain error.

5. In his fourth enumeration of error, Adams contends that the trial court erred in failing to give the jury charge regarding immunity or leniency granted to witnesses, arguing that this failure deprived

[16] *Mathis v. State*, 276 Ga. App. 205, 208 (622 SE2d 857) (2005).
[17] *Floyd v. State*, 263 Ga. App. 3 (1) (587 SE2d 166) (2003).
[18] *Haney v. State*, 261 Ga. App. 136, 142 (6) (581 SE2d 626) (2003).

him of due process of law and also constituted an improper expression of opinion in violation of OCGA § 17-8-57. We disagree.

While charging the jury on the credibility of witnesses, the trial court started to provide the instruction regarding immunity or leniency granted to witnesses,[19] stating: "In assessing the credibility of a witness you may consider any possible motive in testifying [if] shown. In that regard, you are authorized to consider any possible pending —." At that point, the court paused and concluded the instruction by stating: "I'm going to ask you to disregard the last seven or eight or nine words." Contrary to Adams's argument, the trial court's failure to provide this entire charge was not error. "The trial court has the duty to deliver charges tailored to the indictment and adjusted to the evidence." (Punctuation omitted.) *West v. State.*[20] Here, there was no evidence that any witness who testified at trial had been granted immunity or leniency by the State. Thus, the trial court did not err when it decided against charging the jury regarding those issues. See *Diaz v. State.*[21] Furthermore, the trial court's request that the jury disregard the inapplicable charge did not amount to a violation of OCGA § 17-8-57. See *Floyd,* supra, 263 Ga. App. at 3 (1).

6. In his fifth enumeration of error, Adams contends that the trial court erred in omitting the pronoun "she" when charging the jury on the offense of aggressive driving.[22] This enumeration of error, however, is moot in light of the jury's acquittal of Adams on the aggressive driving count. See *Farrier v. State.*[23]

7. In his sixth enumeration of error, Adams argues that the trial court erred by improperly communicating with the jury without the accused present. During its deliberations, the jury sent a note to the trial court asking whether it could consider each aggravated assault count separately. On the record and in the presence of both Adams's counsel and the State prosecutor, the court proposed responding to the note by writing a message in return stating that each count should be considered separately. Both Adams's counsel and the State prosecutor affirmatively stated that they agreed with the court's proposition. During this same colloquy, the trial court also discussed with counsel whether to inquire as to the jury's progress but ultimately decided against doing so, and instead had the bailiff just return the jury's note with the court's response. Given the fact that

---

[19] Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II, Sec. 1.31.80, p. 17 (3d ed. 2003).

[20] *West v. State,* 270 Ga. App. 71, 74 (1) (606 SE2d 100) (2004).

[21] *Diaz v. State,* 239 Ga. App. 795 (2) (522 SE2d 242) (1999).

[22] OCGA § 40-6-397.

[23] *Farrier v. State,* 273 Ga. 302 (2) (540 SE2d 596) (2001).

Adams's counsel was present during the trial court's communication with the jury, and that nothing in the record indicates Adams was not, Adams's contention that the court acted improperly and in his absence is without merit. Cf. *Hanifa v. State.*[24] Compare *Pennie v. State.*[25]

8. Adams contends in his seventh enumeration of error that the trial court erred by allowing the State to make improper remarks during closing argument and by improperly interrupting defense counsel's closing argument. We disagree.

During the State's rebuttal argument, the prosecutor recounted a past incident in which he and a friend were the victims of an armed robbery as an example to the jury of when the use of force in self-defense would be justified. Regardless of whether or not these remarks were improper, Adams did not object to them. His "failure to object to the prosecutor's closing argument at trial waived his right to rely on the allegedly inappropriate statements as a basis for reversal." *Moore v. State.*[26]

Adams's claim that the trial court erred by interrupting his counsel's closing argument is similarly without merit. During closing argument, Adams's counsel made references to the right to bear arms under the Second Amendment to the U. S. Constitution, restrictive gun laws in other countries, and the confiscation of guns by the Nazi regime in pre-war Germany. Following these comments, the trial court interrupted and requested that counsel not stray into matters that were not relevant. Contrary to Adams's assertions, the trial court's instruction to Adams's counsel that his arguments were not relevant was neither an expression of opinion nor a comment on the evidence. See *Mathis*, supra, 276 Ga. App. at 208. Accordingly, the trial court's interruption of Adams's closing argument was not error.

9. In his eighth and ninth enumerations of error, Adams claims that it was error for the trial court to deny his motions to dismiss the charges due to the fact that his arraignment was postponed on three separate occasions and was not conducted on a fixed date pursuant to OCGA § 17-7-91. We disagree.

OCGA § 17-7-91 (a) provides that "[i]n all criminal cases the court shall fix a date on which the defendant shall be arraigned. The clerk of the court, at least five days prior to the date set therefor, shall mail to the accused and his attorney of record, if known, notice of the date which has been fixed for arraignment." Subsection (b) of this same statute provides in part that "[o]n the date fixed by the court the

---

[24] *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998).

[25] *Pennie v. State*, 271 Ga. 419, 421-422 (2) (520 SE2d 448) (1999).

[26] *Moore v. State*, 280 Ga. 766, 767 (2) (632 SE2d 632) (2006).

accused shall be arraigned." In this case, Adams was notified on October 2, 2005 that his arraignment had been scheduled for January 6, 2006. On January 6, he was informed that his arraignment had been postponed and was sent notice that it had been rescheduled for January 23, 2006. Because his case had not been indicted, his arraignment was again rescheduled and Adams was sent notice on March 21, 2006 that the new date for his arraignment was April 5, 2006.

Adams argues that OCGA § 17-7-91 mandates that the arraignment date be permanently fixed and that it is not subject to rescheduling; Adams, however, provides no basis or citation of authority in support of this interpretation, and we decline to so interpret the statute. Given the fact that each of the notices of arraignment were received by Adams more than five days prior to the scheduled arraignment, including the notice for the arraignment that occurred on April 5, 2006, Adams's argument that the notices were defective is without merit. See *Brown v. State.*[27]

10. In his eleventh enumeration of error, Adams contends that it was error for the trial court to try him on an indictment that listed the incorrect date of the alleged criminal offense, arguing that he is entitled to be tried on a perfect indictment. Specifically, Adams asserts that the indictment denotes October 1, 2005 as the date the offenses occurred, but that the State crossed out this date and handwrote in the correct date of October 2, 2005. This contention is without merit.

With the exception of Count 2, all of the counts on the indictment denote October 2, 2005 as the date the offenses occurred. In Count 2, the typed text denotes "the 26th day of October, 2005" as the date the offense occurred, but there is a hand-written slash through the "6" in "26th," indicating that the correct date is October 2, 2005. However, Adams failed to file a special demurrer before pleading not guilty to the charges, and thus waived his right to be tried on a perfect indictment. See *Stinson v. State.*[28] Moreover, given the correction of the indictment's error, Adams has not been prejudiced.

11. In his twelfth enumeration of error, Adams contends that the trial court erred in denying his plea in abatement of his indictment, arguing that the grand jury that indicted him was not a fair and representative cross-section of the community. Specifically, Adams argues that the most recent census indicated that males comprised 49 percent and females comprised 51 percent of the population of Pickens County. He further argues that out of the 23 grand jurors on

---

[27] *Brown v. State*, 237 Ga. App. 489, 490 (515 SE2d 428) (1999).
[28] *Stinson v. State*, 279 Ga. 177, 179 (2) (611 SE2d 52) (2005).

the panel that indicted him, 18 were women, and thus women comprised approximately 79 percent of the grand jury while men comprised approximately 21 percent. According to Adams, this significant disparity between the percentage of men in the county and the percentage of men on the grand jury is indicative of prima facie discrimination. This contention is without merit.

Adams's challenge to the composition of the specific grand jury that indicted him rather than to composition of the grand jury array is misplaced as "[t]here is no constitutional guarantee that the grand or petit juries, impanelled in a particular case will constitute a representative cross-section of the entire community." (Punctuation omitted.) *Singleton v. State*.[29] "Purposeful discrimination is not shown by introducing evidence that as to a single grand jury or petit jury members of any large or identifiable segment of the community thereon, . . . are less in proportion than the proportion such identifiable segment bears to the population in general." *White v. State*.[30] "Rather, the proper inquiry concerns the procedures for compiling the jury lists and not the actual composition of the grand or traverse jury in a particular case." (Punctuation omitted.) *Singleton*, supra, 229 Ga. App. at 136 (1). Because Adams has offered no evidence indicating that men are discriminated against with regard to the composition of the grand jury array, the trial court did not err in denying his plea in abatement.

12. Adams claims in his thirteenth enumeration of error that the trial court erred in granting the State's motion in limine to prohibit Adams from introducing evidence of his authorization to sell guns. Specifically, prior to the start of the third day of trial, Adams and the State argued several motions in limine, including the State's motion to prohibit Adams from discussing the fact that he possessed a Federal Firearm License, which authorized him to sell guns. Although the trial court cautioned Adams that discussing the license would potentially put his character into evidence, the court specifically reserved ruling on the issue, stating, "I'm not going to make an advance ruling on that." There is nothing in the record indicating that the trial court subsequently prohibited Adams from discussing the Federal Firearm License or that Adams, himself, attempted to discuss the issue at any point during trial. Accordingly, this issue was not preserved for appellate review. *Askew v. State*.[31]

13. In his fourteenth enumeration of error, Adams claims that the trial court erred in ruling that the victim impact statement was

---

[29] *Singleton v. State*, 229 Ga. App. 135, 136 (1) (493 SE2d 556) (1997).

[30] *White v. State*, 230 Ga. 327, 331 (2) (196 SE2d 849) (1973).

[31] *Askew v. State*, 254 Ga. App. 137, 139 (2) (564 SE2d 720) (2002).

inadmissible. During Adams's cross-examination of the victim (Mrs. Hunt), his counsel sought to admit into evidence the victim impact statement, which the investigating deputies had Mrs. Hunt complete on the day of the incident. Following the State's objection, the trial court questioned Adams's counsel as to why the statement was being introduced. When counsel stated the document was being admitted for impeachment purposes, the trial court responded, "Well, why don't you just ask her questions, let her look at it, and refresh her recollection if she needs to." Adams's counsel then proceeded to follow the court's suggestion. Contrary to Adams's assertions, the trial court did not rule that the victim impact statement was inadmissible. And, there is nothing in the record showing that Adams made another attempt, unsuccessful or otherwise, to have the statement admitted. Consequently, this alleged error was not preserved for appellate review. *Askew*, supra, 254 Ga. App. at 139 (2).

14. In his fifteenth enumeration of error, Adams contends that the trial court erred by allowing the State to bring in Mrs. Hunt's three sons before the jury and to have Mrs. Hunt identify them as her sons. Specifically, Adams argues that this demonstration was prejudicial and violated his rights to due process of law. This contention is without merit.

During Mrs. Hunt's testimony, the State requested that her three sons be brought into the courtroom so that she could identify them. According to the prosecutor for the State, the reason for this demonstration was to show the children as a family unit just as they had been on the day of the incident. Over Adams's objection, the trial court allowed the children to enter the courtroom but restricted Mrs. Hunt's testimony to confirming that they were indeed her children. Setting aside whether this demonstration was relevant, even if we were to assume that it was irrelevant, it was not so prejudicial to Adams's right to a fair trial as to warrant reversal of his conviction. See *Spickler v. State*.[32] Moreover, two of Mrs. Hunt's sons testified at trial and were cross-examined by Adams's counsel. Thus, even if the demonstration of bringing the sons into the courtroom for identification purposes was erroneous, the error was rendered harmless by proof of the same facts (their identities as Mrs. Hunt's sons and presence during the incident) through their properly admitted testimony. See *Scott v. State*.[33]

15. In his sixteenth enumeration of error, Adams contends that the State prosecutor engaged in misconduct by misrepresenting the

[32] *Spickler v. State*, 276 Ga. 164, 167 (6) (575 SE2d 482) (2003).
[33] *Scott v. State*, 243 Ga. App. 383, 386 (2) (532 SE2d 141) (2000).

availability of a witness originally listed on the State's witness list. This contention is without merit.

During the initial and rebuttal testimony of the investigating deputy, Adams's counsel asked if the deputy knew the whereabouts of his former co-worker who was actually the first deputy to respond on the day of the incident. Both times, the deputy responded that he believed his former co-worker had resigned to join the army. During the deputy's rebuttal testimony, Adams's counsel asked additional questions regarding whether the deputy knew if his former co-worker was currently working at a local club. The State objected as to relevancy, and a bench conference ensued in which Adams's counsel stated that he believed the former deputy was still working locally. The prosecutor for the State responded that the former deputy had informed him that he would not be available to testify at trial and therefore was not called. Adams's counsel offered no objection and made no indication that he believed the State had engaged in misconduct. Indeed, counsel's only request was that the court allow him to continue questioning the testifying deputy as to whether he knew if his former co-worker was still working locally. The court agreed, the inquiry was made, and the deputy responded that he was not aware of his former co-worker's current employment status.

Adams's contention that the State prosecutor engaged in misconduct by misrepresenting the former deputy's whereabouts is procedurally barred as Adams did not raise any objection whatsoever to this alleged misconduct at trial. *Dyer v. State.*[34] Furthermore, Adams has offered no evidence that any misconduct occurred nor any authority suggesting that the State is required to call every witness on its witness list. See *Smith*, supra, 275 Ga. App. at 65 (7).

16. In his seventeenth enumeration of error, Adams contends that the trial court erred by granting the State's motion in limine precluding Adams's testimony regarding the fact that he had been the victim of a robbery in the past. This contention is without merit.

Prior to the start of the second day of trial, the State filed a motion in limine to preclude Adams from testifying about the fact that he had been the victim of an attempted robbery but had defended himself using his pistol. Following argument by Adams and the State, the trial court granted the State's motion. Adams argues that the court erred because such testimony was relevant to show his state of mind as it related to whether it was reasonable for him to believe that he needed to defend himself against a perceived threat. This argument is misplaced. Because Adams was asserting self-defense, he could show other specific acts of violence committed against him and

---

[34] *Dyer v. State*, 278 Ga. 656, 659 (6) (604 SE2d 756) (2004).

others by Mrs. Hunt, if any such acts existed. See *Chandler v. State*.[35] "He could not, however, support that defense by the proffer of any evidence based upon the commission of extraneous acts of [violence] upon him by anyone other than [Mrs. Hunt]. It would be difficult, if not impossible, for the State to rebut, refute or test as to credibility, evidence of [violence] by third parties." (Punctuation omitted.) *Bryant v. State*.[36] Accordingly, the trial court did not err in granting the State's motion in limine.

*Judgment affirmed. Mikell and Phipps, JJ., concur.*

DECIDED NOVEMBER 27, 2006 —
RECONSIDERATION DENIED DECEMBER 11, 2006.

*Wesley B. Weaver*, for appellant.
*Joe W. Hendricks, Jr., District Attorney, Alejandro V. Pascual IV, Assistant District Attorney*, for appellee.

[35] *Chandler v. State*, 261 Ga. 402, 407 (3) (b) (405 SE2d 669) (1991).
[36] *Bryant v. State*, 271 Ga. 99, 101 (3) (515 SE2d 836) (1999).