## A07A1109. THOMAS v. THE STATE.
### (654 SE2d 682)

BARNES, Chief Judge.

Darryl Thomas appeals his convictions of one count each of aggravated sodomy[1] and simple battery. Thomas contends the trial court erred by denying his chain of custody objection to the admission of DNA test results and his objection to admitting statements the victim made to medical personnel. He also contends the evidence is insufficient to sustain the verdict. Finding no reversible error, we affirm.

Viewed in support of the verdict, the evidence shows that Thomas and the victim were cellmates in the DeKalb County Jail when the incidents giving rise to these charges occurred. Only two prisoners were in each cell. The prisoners are locked down every night, and when locked down, must stay in their cells. Although it is possible for inmates to spend the night in cells other than the one to which they are assigned, no such evidence was presented in this case. On the night in question, a guard patrolled the corridor on which the cell of Thomas and the victim was located, and he did not see anything out of the ordinary, nor was anything reported.

The next morning, a detention officer noticed that the victim appeared disturbed and that his face was bruised and badly swollen. The officer also noticed that a towel in the cell had a red stain. He took the victim to the medical room where he was examined and *photo-graphs* taken.

The nurse who examined the victim questioned him about his appearance. The victim said that he had fallen. She noted that he was very quiet. The nurse questioned the victim about his injuries because the injuries she saw were inconsistent with his explanation for them.

The victim then related to the nurse that he had been kicked, kneed, and sexually assaulted by being rectally penetrated. He complained of pain to his ribs, eye, and when he attempted a bowel movement.

The victim was taken to Grady Hospital where he was examined by a physician. He described the attack to the physician, and a CAT

---

[1] Although Thomas was charged with a count of aggravated oral sodomy, a motion for a directed verdict of acquittal was granted on that charge.

scan showed that he had a fracture to his left orbit with soft tissue "prolapsing" through the site of the fracture.

Although the doctor testified that the victim claimed that he was the victim of "penile penetration of his anus against his will," the doctor found no evidence of rectal tearing or bleeding. The doctor noted, however, that such tearing does not always occur in cases of forceful rectal penetration. Although the doctor diagnosed only a "possible sexual assault," he prepared a sexual assault kit that included anal and buccal swabs from the victim.

A paramedic testified that she drew Thomas's blood and placed it in a vial, which she placed in a double sealed plastic bag and gave to a detective who was present. This detective testified that he was present when the blood was drawn and that he received it from the paramedic, and took it to the Georgia Bureau of Investigation (GBI) Crime Lab. Later, DNA test results of the sperm on the swabs from the victim matched the DNA of the blood sample taken from Thomas.

The physician at Grady testified that he placed the swabs and smears in a sexual assault kit and gave the kit to one of the officers from the jail. In court, the doctor identified the kit. An officer testified that he received the kit from the doctor and took it to a detective, and the detective testified that he placed it in the secure property room.

A forensic biologist at the Crime Lab testified that the kit was given a set of identifying numbers and a bar code. The kit, along with several others, was shipped in a large box to a laboratory in New Orleans[2] to test for the presence of sperm. The box was sealed with tamper-proof evidence tape. Later, the box, with all the evidence sent originally, was returned from the lab in New Orleans.

DNA testing of the sperm on the rectal swab received from the lab in New Orleans matched the DNA of the blood sample taken from Thomas. The DNA profile from the swab appears only in one out of 600 billion among African-Americans and one in one trillion Caucasians.

The State was unable to produce the victim at the trial. Thomas did not testify or present other evidence.

1. Thomas contends the evidence the State presented is insufficient to sustain his convictions because the crucial elements of the State's case were established only by "extraordinarily weak evidence." He argues that the only evidence of his identity was DNA evidence that suffered from a break in the chain of custody and that the only evidence of force and violence necessary to support the

---

[2] The State contends that personnel from the lab in New Orleans were unavailable for Thomas's trial because of Hurricane Katrina.

aggravated sodomy conviction was inadmissible hearsay. For the reasons stated below in Divisions 2, 3, and 4, we reject these assertions.

"When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." *Dean v. State*, 273 Ga. 806, 806-807 (1) (546 SE2d 499) (2001). We review the evidence in the light most favorable to the jury's verdict, giving deference to the jury's determination as to the proper weight and credibility to be given the evidence. *Butler v. State*, 273 Ga. 380, 382 (1) (541 SE2d 653) (2001). "It is the jury's prerogative to choose what evidence to believe and what to reject," *Trammell v. State*, 253 Ga. App. 725, 726 (1) (560 SE2d 312) (2002), and it is the function of the jury, not this Court, to assess the credibility of the witnesses, to resolve conflicting evidence, and to determine the facts. *Butler v. State*, supra, 273 Ga. at 382 (1). Thus, "[a]s long as some competent evidence exists, even though contradicted, to support each fact necessary to make out the State's case, we will uphold the factfinder's verdict." (Citation and punctuation omitted.) *Childress v. State*, 251 Ga. App. 873, 876 (2) (554 SE2d 818) (2001).

In this case, we are satisfied that the jury could conclude from the evidence discussed above that Thomas and the victim were locked in the cell together alone overnight, the next morning the victim had visible signs of injuries that prompted an investigation and medical treatment, the victim stated that he had been sexually assaulted and beaten against his will, and the DNA evidence connecting Thomas to the sexual assault was sufficient for any rational trier of fact to have found Thomas guilty beyond a reasonable doubt.

"The mere possibility that someone other than the defendant committed the crime charged in the indictment is not such a reasonable hypothesis as must be excluded in order for circumstantial evidence to authorize a verdict of guilty." (Citations and punctuation omitted.) *Brown v. State*, 170 Ga. App. 398, 400 (5) (317 SE2d 207) (1984). "Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury," (citations and punctuation omitted) *Haney v. State*, 261 Ga. App. 136, 138 (1) (581 SE2d 626) (2003), and when the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless it is insupportable as a matter of law. *Pattillo v. State*, 250 Ga. 510, 512 (299 SE2d 710) (1983); *Jones v. State*, 165 Ga. App. 36, 38 (299 SE2d 576) (1983). Accordingly, this enumeration of error is without merit.

2. Thomas contends the DNA test results should not have been admitted in evidence because the State did not establish a proper chain of custody. He argues that the results should not have been admitted because

> highly contaminable evidence that had admittedly been mailed to another state, handled by an unknown number of people, subjected to "testing" with no indication of what procedures might or might not have been followed during the testing, and then, months later, returned to Georgia.

Although concerned about the DNA test results, Thomas has focused his attack on the testing of the rectal swab from the victim that was sent to a private laboratory to determine whether sperm was present. After the swab was returned to the GBI Crime Lab, DNA was extracted from the sperm and then compared with DNA from a sample of Thomas's blood. Thomas argues that the State failed to prove the chain of custody because it did not call everyone who had custody of the swab, did not call the witnesses who tested the swab, and did not prove that there had been no tampering with the swab.

"When the State seeks to introduce into evidence an item that is subject to the chain of custody rule, it must establish with reasonable assurance that the item seized is the same as the item being offered into evidence." (Footnote omitted.) *Armstrong v. State*, 274 Ga. 771, 772 (2) (560 SE2d 643) (2002). Nevertheless, "[t]he State is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence. We review the trial court's decision on the adequacy of the chain-of-custody evidence under an abuse-of-discretion standard." (Citations, punctuation and footnotes omitted.) *Maldonado v. State*, 268 Ga. App. 691, 691-692 (1) (603 SE2d 58) (2004). Also, this court has

> recognized that where, as here, there is no affirmative evidence of tampering or substitution, a missing link in the chain of custody does not alone require exclusion of the evidence. Thus, where the testimony shows that the police placed the substance in a tamper-proof identifiable con-tainer and that the crime lab . . . technician who tests the substance received it in the same container with no proof of tampering or substitution, the State has met its burden of showing with reasonable certainty that the substance tested was the same as that seized.

(Footnotes omitted.) *Franklin v. State*, 281 Ga. App. 409, 411-412 (2)

(636 SE2d 114) (2006). "The fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it admissible." (Citation and punctuation omitted.) *Myers v. State,* 196 Ga. App. 104, 105 (1) (395 SE2d 372) (1990).

We find that the trial court did not abuse its discretion by admitting this evidence because no evidence of tampering was presented, and Thomas's argument that the State or the lab in New Orleans mishandled the evidence is too speculative to require exclusion of the DNA test results.

To accept Thomas's argument that someone tampered with the swab, we must conclude that someone in New Orleans had access to Thomas's sperm, could ascertain which of the coded samples belonged to the victim in this case, and then put Thomas's sperm on the swab taken from the victim. We find that argument unreasonable. "Whatever doubt may have arisen from the alleged mishandling of evidence in this specific case could have been argued to, and considered by, the jury," (footnote omitted) *Armstrong v. State,* supra, 274 Ga. at 774 (2), and the jury is charged with deciding how much weight to give evidence. See *Beam v. State,* 265 Ga. 853, 854 (2) (463 SE2d 347) (1995); see generally *Peppers v. State,* 261 Ga. 338, 340 (2) (404 SE2d 788) (1991). " '[W]here there is only a bare speculation of tampering it is proper to admit the evidence and let whatever doubt remains go to its weight.' [Cit.]" *Kerr v. State,* 205 Ga. App. 624, 626 (1) (423 SE2d 276) (1992). There being, at most, a bare speculation of tampering or substitution, the trial court correctly admitted the DNA test results into evidence. *Johnson v. State,* 143 Ga. App. 169, 170 (1) (237 SE2d 681) (1977).

3. Relying upon *Crawford v. Washington,* 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), Thomas contends his confrontation rights were violated by the admission of hearsay statements made by the victim to the physician and the nurse. We note that the trial court excluded all of the victim's statements to the jail deputies and police officers as well as the victim's statements to the nurse and doctor that identified Thomas as the perpetrator or exceeded what the trial court deemed necessary for diagnosis and treatment. The trial court ruled:

> In other words, the medical outcry is in. The symptoms are in. That he was struck were in. That there was forcible anal sodomy is in because that would relate to the degree of damage and treatment that might be required of the victim. In other words, one would have less physical damage often with consensual sodomy than forced.

In *Crawford*, the United States

> Supreme Court held that the right of confrontation found in the Sixth Amendment to the United States Constitution requires that "testimonial" hearsay in a criminal prosecution is admissible when the declarant is unavailable only if the defendant had a prior opportunity to cross-examine the declarant about the hearsay statement.

(Footnote omitted.) *Moody v. State*, 277 Ga. 676, 679-680 (4) (594 SE2d 350) (2004). Later, the Supreme Court of Georgia held the term "testimonial" as used in *Crawford* applies to statements that are the result of police questioning. *Brawner v. State*, 278 Ga. 316, 318 (2) (602 SE2d 612) (2004). Thus, the question to be decided is whether the statements made by the victim to the nurse and doctor were testimonial so as to invoke the Confrontation Clause.

The Court in *Crawford* did not specifically define what constitutes a "testimonial" statement, but

> it did establish that at the very least, a statement is testimonial if it is made with "the involvement of government officers in the production of testimonial evidence," which includes police interrogations. It went on to note that it was using "interrogation" in its colloquial, not technical sense, and averred that this included "structured police questioning." Since *Crawford v. Washington*, we have interpreted "testimonial statements" to include those statements made by witnesses to police officers investigating a crime.

(Footnotes omitted.) *Jenkins v. State*, 278 Ga. 598, 605-606 (2) (604 SE2d 789) (2004). We find that, even though officers may have been present while the victim, an inmate in the county jail, spoke with the nurse and doctor, the statements which were admitted at trial were not the product of police questioning and were not made to the police. Instead, the statements that were admitted were made to a nurse and doctor while they were examining the victim to ascertain the scope, diagnosis, and treatment of his injuries.

In *Crawford*, the Court identified several classes of clearly "testimonial" statements:

> "*ex parte* in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants

> would reasonably expect to be used prosecutorially," "extra-judicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." These formulations all share a common nucleus and then define the [Confrontation] Clause's coverage at various levels of abstraction around it. Regardless of the precise articulation, some statements qualify under any definition — for example, *ex parte* testimony at a preliminary hearing.

(Citations and punctuation omitted.) *Crawford*, supra, 541 U. S. at 51-52 (III) (A). *Crawford* also noted that " 'testimony' is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact, a formal statement made to government officers in the production of testimonial evidence." (Footnote omitted.) *Pitts v. State*, 272 Ga. App. 182, 186 (2) (612 SE2d 1) (2005). The statements in this case that were admitted under the medical diagnosis or treatment exception do not fall within any of the described classes of testimonial statements. In particular, no objective witness would reasonably conclude that these statements were made under such circumstances that the statement would be available for use at a later trial. See *State v. Stahl*, 111 Ohio St.3d 186 (855 NE2d 834) (2006); compare *Hernandez v. State*, 946 S2d 1270 (Fla. App. 2007). Further, in *Crawford*, the Supreme Court also

> recognized that close constitutional scrutiny is inappropriate in cases which are far removed from the Clause's core concern with ex parte testimony. Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law. Thus, state courts may consider reliability factors beyond prior opportunity for cross-examination when the hearsay statement at issue was not testimonial.

(Citations and punctuation omitted.) *Demons v. State*, 277 Ga. 724, 727 (4) (595 SE2d 76) (2004). Thus, as we have previously determined that statements admissible under OCGA § 24-3-4 are reliable, these continue to be admissible even after *Crawford*.

> The theory behind this exception to the hearsay rule is that information given to medical personnel for the purpose of securing diagnosis or treatment may be deemed inherently

trustworthy. The statute is apparently based on Rule 803 (4)[3] of the Federal Rules of Evidence, since the language of that rule is identical to [OCGA § 24-3-4]. The Advisory Committee's Note to Rule 803 (b), as contained in 28 USCA, Federal Rules of Evidence, states, in part: Exception (4). Even those few jurisdictions which have shied away from generally admitting statements of present condition have allowed them if made to a physician for purposes of diagnosis and treatment in view of the patient's strong motivation to be truthful. The same guarantee of trustworthiness extends to statements of past conditions and medical history, made for purposes of diagnosis or treatment. It also extends to statements as to causation, reasonably pertinent to the same purposes, in accord with the current trend. Statements as to fault would not ordinarily qualify under this latter language. Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light. Under the exception the statement need not have been made to a physician. Statements to hospital attendants, ambulance drivers, or even members of the family might be included.

(Citations and punctuation omitted.) *Dunn v. McIntyre*, 146 Ga. App. 362, 363-364 (2) (246 SE2d 398) (1978).

Accordingly, we find that the trial court did not err by admitting these statements.

4. Thomas also contends the trial court erred by allowing the medical personnel to testify about the statements the victim made to them under the medical diagnosis or treatment exception to the hearsay rule because the statements were not made for that purpose. Instead, Thomas argues that the victim's statements to the nurse and doctor were part of the criminal investigation. We disagree. The record shows that the statements made to the medical personnel were made in the course of determining what treatment would be necessary for the victim.

Under our law,

[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general

---

[3] This Rule provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the hearsay rule.

character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence.

OCGA § 24-3-4. Thus, as the challenged statements related to the cause of the victim's injuries and were made for the purpose of the victim's diagnosis and treatment, the trial court did not err by admitting the challenged testimony. *Payne v. State*, 273 Ga. App. 483, 486 (4) (615 SE2d 564) (2005).

Accordingly we find that the trial court did not err by admitting these statements by the victim to the medical personnel. See *Miller v. State*, 194 Ga. App. 533, 534 (2) (a) (390 SE2d 901) (1990) (although victim's statement to emergency room physician that she had been raped was admissible under OCGA § 24-3-4, admission of that portion of statement in which she had identified rapist was error). Compare *Johnson v. State*, 149 Ga. App. 544, 545 (5) (254 SE2d 757) (1979) (the identity of the defendant contained in the out-of-court statements to medical personnel was inadmissible as it was unnecessary to any legitimate purpose addressed in this section).

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 28, 2007 — 

*Gerard B. Kleinrock, Corinne M. Mull*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.