66866. STEIN et al. v. CHEROKEE INSURANCE COMPANY.

SHULMAN, Chief Judge.

This appeal is from a judgment entered after a bench trial on an action for the recovery of the insurance premiums collected by appellant/Stein but never remitted to appellee/Cherokee Insurance Company. The judgment held the individual defendant, Arthur Stein, and the corporate defendant, Property & Casualty Services, Inc. (not a party to this appeal), jointly and severally liable to appellee for these payments.

The trial court's finding of facts states that appellant was president, director, sole stockholder, alter ego, and sole motivator of the business activities of Property & Casualty Services, Inc., and its parent company, Life & Health Services, Inc. Property & Casualty was authorized by a written agency contract to sell insurance policies for appellee, retain a commission equal to 17-1/2% of the total premium, and remit to appellee the remaining portion of the premium. In February of 1981, Property & Casualty sold a policy to Papa, Inc., but failed to remit to appellee the portion of the premium due it. Subsequently, with the debt to appellee still owing, appellant arranged a sale of the joint assets of Property & Casualty and of Life & Health Services. Appellant sold the combined assets for approximately $100,000 but retained the liabilities of both cor-

porations. The buyer paid between $30,000 and $35,000 in cash and signed a three-year promissory note, which as of the date of trial remained substantially uncollected, to cover the balance. The proceeds from the sale were insufficient to completely pay the liabilities of both companies. Faced with this deficiency, appellant applied the proceeds to payment of a debt of Property & Casualty on which he was personally liable as guarantor. Since the debt to appellee was still owing, appellant was ruled to have preferred himself over appellee by applying corporate assets to the other debt. The trial court entered judgment in favor of appellee and this appeal ensued.

1. Appellant received a subpoena at 4:51 p.m. the day before the trial, commanding him to appear in court the next day at 9:00 a.m. Appellant was present the following day at the prescribed time, but objected to the validity of the subpoena because it was served less than 24 hours before he was supposed to appear. The trial court offered to grant a continuance to better allow appellant to prepare for trial, but appellant refused, choosing to proceed with the trial. It is claimed on appeal that it was error to compel appellant's appearance before the court pursuant to the subpoena in question. Appellant argues that the granting of a continuance would have been tantamount to enforcement of the allegedly invalid subpoena. We find this argument circuitous and therefore disagree.

Appellant's contention is based on language contained in OCGA § 24-10-25 (a) (Code Ann. § 38-801) and in *Eubanks v. Brooks,* 139 Ga. App. 166, 167 (227 SE2d 923). "[T]he trial court cannot *impose sanctions* upon a witness who fails or refuses to appear in answer to a subpoena served less than 24 hours before the required appearance." (Emphasis supplied.) Id. However, *Eubanks* goes on to state that "[t]he trial court can extend the length of notice where it believes preparation is required . . . [A] subpoenaed witness may . . . waive the 24 hour notice requirement . . ." Id. In the present case, no sanctions were threatened against appellant by the trial court, but the court offered to grant a continuance to allow appellant to prepare for trial. Since the assurance of adequate time for preparation by a witness for trial is the obvious intent of OCGA § 24-10-25 (a) (Code Ann. § 38-801), we hold that appellant waived the 24-hour notice requirement when he refused the trial court's offer of continuance and voluntarily testified at trial. Accordingly, the trial court properly proceeded with the trial. See *Eubanks,* supra.

2. Appellant contends that it was error for the trial court to admit evidence which pertained to the sale of the companies and addressed his personal liability to appellee for the unremitted insurance premiums. Appellant claims that neither the complaint

nor appellee's answers to interrogatories provided him sufficient notice of the allegation of personal liability. This contention is without merit, however, since the complaint clearly names appellant in his individual capacity as a defendant; thus, there could be no legitimate claim of surprise on appellant's part. See generally *Kamensky v. Stacey,* 134 Ga. App. 530, 532 (215 SE2d 294). The trial court did not err when it ruled that the issue of appellant's personal liability was raised in the pleadings.

3. Appellant claims as error the trial court's finding that his use of the proceeds from the sale of the companies to repay a Small Business Administration (S.B.A.) loan made to Property & Casualty, which loan appellant had personally guaranteed, amounted to a preference in derogation of appellee's rights as a creditor. Appellant argues that the S.B.A. loan was prior in time to the incurrence of debt to appellee and was therefore superior to appellee's claim. However, we can find no evidence in the record to support this claim, and it is well settled that it is appellant's burden to show affirmatively by the record that a judgment is erroneous. *Richter v. Cann,* 191 Ga. 103, 105 (11 SE2d 774). Therefore, we hold that there was sufficient evidence to support the trial court's holding that by paying the debt he personally guaranteed from the proceeds of the sale of Property & Casualty, appellant breached his fiduciary duty owed to appellee as a creditor to the corporation. See *Tatum v. Leigh,* 136 Ga. 791 (72 SE 236).

4. Appellant further argues that the trial court erred in finding that appellant was the alter ego of Property & Casualty because such a ruling was unsupported by the evidence. Appellant testified that he and his wife were the sole officers, directors, and stockholders of the two corporations and that he made all the business decisions for each company. Furthermore, as stated in Division 3, the trial court found that appellant had preferred himself over the creditors of Property & Casualty. The facts of the present case are similar to those in *Fountain v. Burke,* 160 Ga. App. 262 (287 SE2d 39), where the corporate entity was pierced and the officers were held personally liable for the misapplication of proceeds from the sale of their corporation. In light of *Fountain* and the cases cited therein, we find no error in the trial court's ruling that appellant was the alter ego of Property & Casualty.

5. Finally, appellant claims it was error for the trial court to find that proceeds existed from the sale of the assets of Property & Casualty, since he testified that a desk and a file cabinet were the only physical assets the company had at the time of the sale. Appellant asserts that the $30,000 in cash were proceeds from the sale of Life & Health Services. There was additional evidence that revealed that

certain intangible assets, including accounts receivable and rights to renewal policies, were sold along with the physical office furnishings. "In all actions in superior court tried upon the facts without a jury ... [f]indings of fact shall not be set aside unless clearly erroneous ...." OCGA § 9-11-52 (a) (Code Ann. § 81A-152). The preceding Code section has been held to apply to state courts as well as superior courts. *Gen. Finance Corp. v. Hester*, 137 Ga. App. 367 (223 SE2d 763). Therefore, there was evidence from which the trial court could find that the sale of Property & Casualty indeed produced proceeds that could have been applied to the corporation's debt to appellee.

*Judgment affirmed. McMurray, P. J., and Birdsong, J., concur.*

DECIDED NOVEMBER 23, 1983.

*Gary M. Goldsmith,* for appellants.
*W. Seaborn Jones,* for appellee.