A09A0218. IN RE HUGHES.

(681 SE2d 745)

BARNES, Judge.

Attorney Ella A. Hughes appeals the juvenile court's orders finding her in contempt of court. Hughes contends the trial court erred by finding her in contempt of court without first giving her notice and an opportunity to be heard and also contends that the later post-contempt hearing violated OCGA § 15-11-5 and due process. She further asserts the trial court erred by failing to grant her supersedeas application immediately in violation of OCGA § 5-6-13, that complying with the contempt order did not render her appeal moot, and that her conduct did not warrant a finding of contempt. We agree in part, and for the reasons stated below, we reverse the finding of contempt.

1. The Attorney General's office contends in its brief that Hughes' appeal is moot because the juvenile court imposed a sanction of ten days in jail or a $1,000 fine, and Hughes paid the fine. See *Herring v. Herring*, 236 Ga. 43, 44 (1) (222 SE2d 331) (1976). We disagree. In addition to those sanctions, the trial court's order also removed Hughes from the juvenile court's court-appointed attorneys list. As nothing in the record shows that Hughes has been restored to the court-appointed attorneys list,[1] Hughes continues to be under

---

[18] *Guice v. State*, 282 Ga. App. 747, 748-749 (2) (639 SE2d 636) (2006).

[19] *Hughes v. State*, 273 Ga. App. 705, 706 (615 SE2d 819) (2005).

[1] In fact, the transcript shows that the juvenile court stated that additional cases would not be assigned to Hughes until the court was satisfied that she would not repeat her conduct

the penalty of the court's sanctions. Additionally, in the case of *In re Hatfield*, 290 Ga. App. 134, 136-137 (658 SE2d 871) (2008), this court noted that

> a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction. Adverse collateral consequences can be found through recidivist statutes, parole consequences, and even the stigma and burden of an invalid sentence. In light of such possible collateral consequences, the federal appellate court in *United States v. Schrimsher*[, 493 F2d 842 (5th Cir. 1974),] found that an appeal by an attorney from a finding of contempt should not have been dismissed as moot even though the contempt sanction was imposition of a sentence of confinement that had been served. In so holding, the court in *Schrimsher* recognized that a contempt of court conviction against an attorney would be especially damaging if he were ever again accused of being in contempt of court. Conviction for contempt of court could also have serious adverse career consequences for the attorney. His conviction could provide a basis for disciplinary action by a bar association. Opportunities for appointment to the bench or to other high office might be foreclosed as a result of this blot upon his record. The conviction might damage his reputation in the legal community, and this in turn might affect his ability to attract clients and to represent them effectively, especially in open court.

(Citation, punctuation and footnotes omitted.) Therefore, because of the present and possible continuing adverse collateral consequences Hughes may suffer as a result of her contempt of court conviction, her appeal of that conviction is not moot.

2. As Hughes' punishment was a sanction for her conduct, she was found in criminal contempt[2] by the juvenile court.

> Juvenile courts are authorized to punish for contempt for disobedience of an order of the court or for obstructing or

---

and that any request to be restored would be evaluated based upon her conduct in the cases to which she was already assigned.

[2] "The distinction between criminal and civil contempt is that criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order." (Citation and punctuation omitted.) *City of Cumming v. Realty Dev. Corp.*, 268 Ga. 461, 462 (491 SE2d 60) (1997).

interfering with its proceedings. The question of whether a contempt has occurred is for the trial court, and its determination will be overturned only if there has been a gross abuse of discretion. On appellate review of a criminal contempt conviction, this Court determines whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citation and punctuation omitted.) *Morris v. State*, 295 Ga. App. 579, 579-580 (672 SE2d 531) (2009). Hughes first contends the trial court erred by holding her in contempt without giving her notice and an opportunity to be heard. The transcript shows that during the course of deciding where to place children while their mother was in jail serving her own sentence for contempt, Hughes suggested that the children be placed with their fathers rather than in the custody of the Department of Family and Children Services (DFCS). Then the following transpired:

> THE COURT: Are the fathers here?
>
> MS. HUGHES: In court, Your Honor?
>
> THE COURT: Yes.
>
> MS. HUGHES: No. But, I'm —
>
> THE COURT: Then the only ones that I can place the children with is with DFCS and then the — that expression, ma'am, just cost you $100. You are removed from the court approved list. That is absolutely —
>
> MS. HUGHES: Your Honor, if I may, I only —
>
> THE COURT: No, ma'am. Don't interrupt. Your sarcastic looks and your sarcastic attitude is [sic] unacceptable to this Court. You are removed from the appointed list. You can reapply at some other time. You can stay on the cases that you presently have but if I ever see that action from you again I can assure you that appropriate actions will be taken. Do you understand that, ma'am?
>
> MS. HUGHES: Yes, sir.
>
> THE COURT: You may not like my rulings but you can surely appeal them.
>
> MS. HUGHES: If I may, Your Honor, the only thing I did was bow my head to write down what you were saying.
>
> THE COURT: No, ma'am. You did not. Now you have tested the Court's patience. I find you in willful contempt of this Court. You are fined $1,000 and you are given ten days in jail. Take her into custody.

I want the record to reflect that the attorney I just had to hold in contempt was not just bowing her head but she was giving sarcastic, unprofessional looks, body action that showed her disgust for the Court's ruling and disrespect for the Court in its entirety.

Later, the court instructed the attorney preparing the confinement order that its findings were that Hughes

one, made inappropriate facial and body responses to the Court's ruling, that she expressed unprofessional conduct towards the Court, and that she tried to persuade the Court by giving inappropriate explanations of her conduct. . . . We're talking about this lady right here. Found in willful contempt of the Court's order. I mean, she's found in willful contempt. She's given ten days in the common jail in Henry County. She can purge herself by paying a fee of $1,000. She's also removed from the approved appointed list of the court. But she can reapply. And she will remain with the cases that she has presently been appointed to.

In the case of *In re Jefferson*, 283 Ga. 216, 217 (657 SE2d 830) (2008),[3] which also involved a criminal contempt adjudication against an attorney in juvenile court, our Supreme Court held:

The Georgia Constitution provides that "(e)ach court may exercise such powers as necessary in aid of its jurisdiction or to protect or effectuate its judgments." Ga. Const. of 1983, Art. VI, Sec. I, Par. IV. Premised on this constitutional foundation, this Court has long held that the contempt power is inherent in every court and, as such, is not subject to abridgement or restriction by the Legislature. *Bradley v. State*, 111 Ga. 168 (1), (2) (36 SE 630) (1900). Although there do exist various statutory provisions purporting to define the parameters of contempt, "(t)he broad authority of a judge to preserve good order in the courtroom by the use of contempt power is well recognized and must be preserved if the courts are to perform their public duty." *Garland v. State of Ga.*, 253 Ga. 789, 791 (2) (325 SE2d 131) (1985).

---

[3] Jefferson was cited for "eight instances of allegedly contemptuous conduct during the course of the delinquency proceedings, including inappropriate facial expressions, disrespectful tone of voice, and improper statements." Id. at 216.

Then, in footnote 1, the court held further that

> notwithstanding statutes prescribing arguably different standards for contempt in different courts, see OCGA §§ 15-1-4 (a), 15-11-5, we hold expressly that the standard for contempt set forth in this opinion shall be uniformly applicable in the courts of this State, regardless of the particular forum.

Id.

As our Supreme Court reminded us in *Jefferson*, "criminal contempt is a crime in the ordinary sense. Like all crimes, contempt has an act requirement (actus reus) and a mental component (mens rea)." (Citation and punctuation omitted.) Id at 218. To satisfy the act requirement, proof must show the act constituted an imminent threat to the administration of justice. Id. at 219. To satisfy the intent element, the Supreme Court adopted

> a more objective formulation of intent, whereby contempt may be found only where the attorney knows or reasonably should be aware in view of all the circumstances, especially the heat of controversy, that he is exceeding the outermost limits of his proper role and hindering rather than facilitating the search for truth. This standard both recognizes the importance of protecting — and not preemptively discouraging — zealous advocacy while preventing an attorney's self-serving (and difficult to disprove) claim of good faith from absolutely immunizing the contemnor from contempt in egregious cases.

(Citation and punctuation omitted.) Id. at 220. In summary, the court held that

> an attorney may be held in contempt for statements made during courtroom proceedings only after the court has found (1) that the attorney's statements and attendant conduct either actually interfered with or posed an imminent threat of interfering with the administration of justice and (2) that the attorney knew or should have known that the statements and attendant conduct exceeded the outermost bounds of permissible advocacy. Because contempt is a crime, the evidence must, of course, support these findings beyond a reasonable doubt.

(Citation and punctuation omitted.) Id. The court then offered a

nonexhaustive list of factors that should be considered:

> (1) the extent to which the attorney was put on notice prior to the contempt citation that a continuation of the offending statements would constitute contempt; (2) the likely impact of the offending statements on the deliberations of the factfinder, which calculus incorporates both the nature and timing of the offending conduct and whether the factfinder is a judge or jury; (3) whether the offending statements occurred as an isolated incident or constituted a pattern of behavior; (4) the significance of the particular issue in question to the case as a whole and the relative gravity of the case; and (5) the extent, if any, to which the trial court provoked the offending statements with its own improper statements.

Id. The court also stated that in "adjudicating a case of possible contempt, 'doubts should be resolved in favor of vigorous advocacy,' " id., and reminded trial judges that they "must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." Id. at 221.

Here, we find that the trial court erred by immediately imposing punishment and not providing Hughes the opportunity to speak in her own behalf. Indeed, when Hughes did attempt to explain her actions, the trial court increased her fine ten-fold.

Further, in applying the standards we note that (1) the attorney was not put on notice before the contempt citation that a continuation of the offending conduct would constitute contempt; (2) it is highly unlikely that Hughes' allegedly offending conduct *should* have had any impact on the deliberations of the factfinder, the juvenile judge; (3) it appears from the juvenile court's comments, however, that the offending conduct constituted a pattern of behavior; (4) the particular issue in question, providing the information that DFCS wanted, was not of great significance to the case as a whole, i.e., whether the children were deprived, but the incarceration of Hughes' client was a grave issue in itself and because it would result in her children being removed from her home and placed in DFCS's custody; and (5) the trial court did not provoke the offending conduct. We do note, however, that the trial court acted without warning and that the court had obviously lost its patience with Hughes and her client and imposed sanctions for contempt when other actions might have achieved the same result without the disruption to the underlying case that these contempt citations have caused. For example, although it cannot be directly attributable to these appeals, we note that the direct appeal of the trial court's

judgment finding that the children were deprived was dismissed by this court because no enumerations of error and brief were filed by Hughes.

Further, in *Ramirez v. State*, 279 Ga. 13, 14-15 (2) (608 SE2d 645) (2005), our Supreme Court outlined the procedures that a trial court must follow when holding a person in contempt of court for actions committed in the court's presence, i.e., direct contempt of court. In instances of direct contempt,

> *a trial court has the power, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing.* This summary power is authorized where contumacious conduct threatens a court's immediate ability to conduct its proceedings, such as where a witness refuses to testify, or a party disrupts the court. Direct contempts in the presence of the court traditionally have been subject to summary adjudication, to maintain order in the courtroom and the integrity of the trial process in the face of an actual obstruction of justice. In direct contempt proceedings, in light of the court's substantial interest in rapidly coercing compliance and restoring order, and because the contempt's occurrence before the court reduces the need for extensive factfinding and the likelihood of an erroneous deprivation, summary proceedings have been tolerated.

(Citation and punctuation omitted; emphasis supplied.) Id. Because Hughes was not afforded the opportunity to be heard and considering the factors discussed above from the *Jefferson* case, which was published before the juvenile court acted in this case, we must reverse her citation for contempt. Further, as the evidence does not show that Hughes' conduct either actually interfered with or posed an imminent threat of interfering with the administration of justice, we direct the juvenile court to vacate and dismiss its contempt citation.

3. We find Hughes' other enumerations of error to be moot in light of our action in Division 2.

*Judgment reversed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED JULY 14, 2009.

Ella A. Salaam Hughes, *pro se.*
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior*

*Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General*, for appellee.