**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 18, 2012**

# In the Court of Appeals of Georgia

A12A0426. IN THE INTEREST OF J. D., a child.

MILLER, Judge.

Sherwanda Stallworth, the mother of J. D., appeals from the order of the juvenile court finding her in contempt for wilful violation of two juvenile court orders and sentencing her to a total of 40 days for both acts of contempt. Specifically, Stallworth contends that (1) the juvenile court erred in failing to designate the convictions for contempt as either criminal or civil; (2) her second conviction for contempt was in error because her action did not constitute an additional contempt of court, and because the juvenile court's findings of fact were contrary to the weight of the evidence; and (3) her second conviction for contempt was in error because she was issued an unenforceable subpoena. For the following reasons, we affirm the juvenile court's findings of contempt.

"The question of whether a contempt has occurred is for the trial court, and its determination will be overturned only if there has been a gross abuse of discretion." (Citation omitted.) *In re Hughes*, 299 Ga. App. 66, 67-68 (2) (681 SE2d 745) (2009).

The evidence shows that in 2010, J. D. was placed on probation by order of the juvenile court. In December 2010, the juvenile court put Stallworth under a protective order that required her to do the following things in furtherance of her son's delinquency probation:

1. ensure that she keep her home in a clean, appropriate manner;

2. cooperate in good faith with the juvenile court, case workers, or any other agency entrusted by the juvenile court;

3. refrain from acts that might make the child's home an inappropriate place for her children;

4. ensure that the child attends school;

5. participate with the child in any counseling or treatment deemed necessary;

6. attend all appointments with the juvenile court and ensure that the child has transportation to all appointments.

On June 17, 2011, a contempt hearing was scheduled in regard to J. D.'s failure to comply with certain terms of his probation. Stallworth admitted that she had received a subpoena to appear at J. D.'s contempt hearing. Although J. D. appeared, Stallworth did not. The juvenile court sent deputies to Stallworth's home in an attempt to locate her. As Stallworth was unable to be located, the juvenile court indicated that it would conduct a show cause hearing where Stallworth would have an opportunity to explain why she should not be held in contempt of court. Following the June 17, 2011, hearing, the State filed a motion for wilful contempt against Stallworth for her failure to appear. The State subsequently filed an amended motion for contempt against Stallworth for her wilful failure to comply with the terms of the trial court's prior protective order – specifically, that she failed to cooperate in good faith with the juvenile court, case workers, or other agency entrusted by the juvenile court, and that she failed to participate with J. D. in any counseling or treatment deemed necessary.

The juvenile court considered these two motions as a single contempt of court charge at a hearing on July 28, 2011. Although Stallworth admitted to the contempt charge, she also testified that she had not been able to attend the June 17, 2011, hearing because she was in the hospital for chest pains. Later during the hearing,

3

however, she provided conflicting testimony regarding her whereabouts on June 17, 2011, indicating on one hand that she had been at a friend's house to get a ride to the doctor, and on the other hand, that she was actually at home and did not have transportation where she lived. Stallworth's counsel nevertheless advised the juvenile court that Stallworth had proof of her time in the hospital, but had failed to bring the paperwork with her to court. The juvenile court granted a continuance of several hours and ordered Stallworth, both verbally and by subpoena, to return to court at 4:30 p.m. that day. The juvenile court stated on the record that if Stallworth was not back by 4:30 p.m., she would serve 20 days for the first contempt charge – based upon her failure to appear at the June 17, 2011, hearing and her failure to comply with the protective order regrading J. D.'s probation – and another 20 days for failing to appear at 4:30 p.m. on July 28, 2011. When court reconvened at 4:30 p.m., Stallworth failed to appear. The juvenile court postponed the disposition of the first contempt charge and indicated that there would be another show cause hearing as to why Stallworth should not be held in contempt for failing to appear at 4:30 p.m. on July 28, 2011. The State subsequently filed a motion for contempt against Stallworth for her failure to appear at 4:30 p.m. on July 28, 2011. Both the first and second contempt charges were continued until August 22, 2011.

4

At the August 22, 2011, hearing, Stallworth again admitted to the first contempt of court charge, but denied wilful contempt in the second charge. She indicated that she had been unable to secure transportation to return to court by 4:30 p.m. The juvenile court found her in wilful contempt on both charges and sentenced her to 20 days for each conviction; the juvenile court further provided, however, that after Stallworth's service of the first 20 days in detention, the balance would be suspended upon Stallworth's compliance with the terms and conditions of the protective order. Stallworth was taken from the courtroom immediately to begin her sentence. She timely filed her notice of appeal to challenge the juvenile court's contempt order.

1. Stallworth argues that the juvenile court erred in failing to designate the convictions for contempt as either criminal or civil. We discern no reversible error.

"Once an act has been determined to constitute contempt of court, the action the court takes to deal with the contempt determines whether the contempt is deemed 'criminal' contempt or 'civil' contempt, a distinction historically made by both appellate courts in this state." (Citation and punctuation omitted.) *Rhone v. Bolden*, 270 Ga. App. 712, 714 (2) (608 SE2d 22) (2004). "The distinction between criminal and civil contempt is that criminal contempt imposes unconditional punishment for

5

prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order." (Citation omitted.) *Cabiness v. Lambros*, 303 Ga. App. 253, 255 (1) (692 SE2d 817) (2010). Thus, where a trial court does not specify whether a contemnor is in civil or criminal contempt, this Court must examine the purpose of the contempt order to make such determination. See, e.g., *Phillips v. Tittle*, 261 Ga. 820 (411 SE2d 871) (1992); *Thedieck v. Thedieck*, 220 Ga. App. 764, 765-766 (1) (470 SE2d 265) (1996).

> [T]he conditional or unconditional imposition of a fine or imprisonment indicates the purpose of an order. If the contemnor is imprisoned for a specified unconditional period (not to exceed 20 days under OCGA § 15-6-8 (5) [1]), the purpose is punishment and thus the contempt is criminal. If the contemnor is imprisoned only until he performs a specified act, the purpose is remedial and hence the contempt is civil.

(Citations and punctuation omitted.) *Thedieck*, supra, 220 Ga. App. at 766 (1); see also *In re Earle*, 248 Ga. App. 355, 358 (1) (b) (545 SE2d 405) (2001) ("When the

---

[1] See *Reece v. Smith*, 292 Ga. App. 875, 877 (1) (665 SE2d 918) (2008) (explaining that a superior court is authorized to sentence a contemnor to 20 days in jail and to fine him up to $500 for each individual act of criminal contempt) (citing OCGA § 15-6-8 (5)).

trial court orders incarceration for an indefinite period until the performance of a specified act, the contempt is civil.") (citations and punctuation omitted).

Here, although the juvenile court did not specify whether it found Stallworth in civil or criminal contempt, the purpose of the contempt order was to impose a prison sentence upon Stallworth for her prior acts of contumacy. See *Cabiness*, supra, 303 Ga. App. at 255 (1). Notably, her sentence for the first contempt charge was for a specified unconditional period of 20 days. Thus, the first contempt was clearly criminal. Stallworth's sentence for the second contempt charge was also for a specified period of 20 days, but could be suspended upon her compliance with the juvenile court's protective order. The fact that Stallworth could suspend her sentence, however, did not render this second contempt civil. Significantly, her sentence was not "for an indefinite period" until she in fact complied with the protective order or performed any other specified act. See *Earle*, supra, 248 Ga. App. at 358 (1) (b). Rather, according to the juvenile court's order, even if Stallworth failed to comply with the protective order, she was nevertheless to be released after she served a total of 40 days (20 days for each contempt conviction) in prison. Accordingly, the convictions of contempt imposed upon Stallworth were both criminal, and the trial court did not commit reversible error by failing to specify the nature of the contempt.

7

2. With respect to the second contempt conviction, Stallworth contends that the juvenile court erred because Stallworth's failure to return to court at 4:30 p.m. on July 28, 2011, went to the first contempt charge and did not constitute an additional contempt of court; and because the juvenile court's findings of fact were contrary to the weight of the evidence. Stallworth's contentions are meritless.

"Juvenile courts are authorized to punish for contempt for disobedience of an order of the court or for obstructing or interfering with its proceedings. The question of whether a contempt has occurred is for the trial court, and its determination will be overturned only if there has been a gross abuse of discretion." (Citation omitted.) *Hughes*, supra, 299 Ga. App. at 67-68 (2). "On appeal of a criminal contempt conviction[,] the appropriate standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Punctuation and footnote omitted.) *In re Waitz*, 255 Ga. App. 841, 842 (567 SE2d 87) (2002).

> In order to establish criminal contempt for violation of a court order, there must be proof beyond a reasonable doubt not only that the alleged contemnor violated a court order, but also that he did so wilfully. And to show wilfulness, there must be proof beyond a reasonable doubt that

8

the alleged contemnor had the ability to comply with the court order: It is essential to constitute a contempt that the thing ordered to be done be within the power of the person against whom the order is directed.

(Citation omitted.) *In re Bowens*, 308 Ga. App. 241, 242 (1) (706 SE2d 694) (2011).

Here, during the hearing on the first contempt charge, Stallworth indicated that she had medical documentation explaining her failure to appear at J. D.'s contempt hearing on June 17, 2011. As a result, the juvenile court granted a continuance of several hours and ordered Stallworth to appear back in court at 4:30 p.m. with such documentation. The juvenile court stated on the record that if Stallworth was not back by 4:30 p.m., she would serve 20 days for the first contempt charge and another 20 days for failing to appear at 4:30 p.m. on July 28, 2011. Despite the juvenile court's express order, it is undisputed that Stallworth failed to appear when court reconvened at 4:30 p.m., and Stallworth's counsel indicated that he had received no contact from Stallworth regarding her whereabouts. Given that Stallworth failed to comply with this additional court order, the juvenile court did not grossly abuse its discretion in finding that Stallworth's action constituted an additional contempt of court, separate from the first contempt charge based upon Stallworth's failure to appear at the June

9

17, 2011, hearing and her failure to comply with the protective order regarding J. D.'s probation.

Not only was there evidence that Stallworth violated this additional court order, but there was also evidence that she did so willfully. Although Stallworth later testified that the reason she failed to appear at 4:30 p.m. was her inability to secure timely transportation, the juvenile court judge was authorized to reject her testimony as not credible and find that Stallworth had in fact had the ability to comply with the juvenile court's order to return at 4:30 p.m. "[I]n a contempt hearing before a judge sitting as the trier of fact, the hearing judge, and not the appellate court, determines the credibility of witnesses." (Citation and punctuation omitted.) *Bowens*, supra, 308 Ga. App. at 243 (1). Indeed, Stallworth had a history of providing untruthful and inconsistent testimony before the same juvenile court judge. Notably, despite the fact that the July 28, 2011, hearing was specifically continued to 4:30 p.m. in order for Stallworth to retrieve medical documentation that purportedly excused her absence from the June 17, 2011, hearing, Stallworth's counsel later revealed that Stallworth "was mistaken as to the date" and did not in fact have any medical excuse for June 17, 2011.

Thus, the evidence, viewed in the light most favorable to the prosecution, was sufficient to prove that Stallworth wilfully disobeyed the juvenile court's order to return to court at 4:30 p.m. on July 28, 2011.

3. Stallworth also challenges her second contempt conviction on the grounds that the subpoena was issued to her less than 24 hours prior to the hearing and was thus enforceable. Again, we discern no reversible error.

It is true that a subpoenaed witness cannot be held in contempt for failure to obey a subpoena that was not served upon witness at least 24 hours before the hearing as required by OCGA § 24-10-25 (a). See *Eubanks v. Brooks*, 139 Ga. App. 166, 167 (227 SE2d 923) (1976). Here, the subpoena of which Stallworth complains was served upon her approximately five hours before she was to return to court. However, a witness can waive the 24-hour notice requirement. See id. at 168; see also *Adams v. State*, 282 Ga. App. 819, 822 (3) (a) (640 SE2d 329) (2006); *Stein v. Cherokee Ins. Co.*, 169 Ga. App. 1, 2 (1) (311 SE2d 220) (1983). Under the facts of this case, we conclude that Stallworth waived that requirement. In granting Stallworth a continuance, the juvenile court issued her a verbal order, as well as the written subpoena, requiring her to return to court at 4:30 p.m. or otherwise be held in contempt. At no point before leaving the courtroom, however, did Stallworth object

to the timeliness of the subpoena. We further note that the assurance of adequate time for preparation by a witness is the obvious intent of the 24-hour notice requirement. See *Stein*, supra, 169 Ga. App. at 2 (1). And here, Stallworth had since June 16, 2011, to gather any relevant medical documentation to bring with her to her July 28, 2011, contempt hearing. We thus conclude that Stallworth waived any challenge to the subpoena's timeliness, and the juvenile court did not err in holding Stallworth in contempt.

*Judgment affirmed. Mikell, P. J., and Blackwell, J., concur.*