**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**August 15, 2018**

# In the Court of Appeals of Georgia

A18A1384. IN RE WILLIAMS.

MCMILLIAN, Judge.

Appellant Lauraill Williams appeals from an order of the Clayton County juvenile court holding her in direct criminal contempt after her cell phone sounded during a dependency hearing. Williams contends that the order of contempt should be reversed because: (1) her due process rights were violated when she was not afforded an opportunity to speak on her own behalf; (2) the contempt order is deficient on its face in that it fails to set forth sufficient facts in support of the finding of contempt; and (3) her equal protection rights were violated because other attorneys whose cell phones sounded in court were not found in contempt. As more fully set forth below, we agree that the contempt order must be reversed.

The Georgia Constitution provides that "[e]ach court may exercise such powers as necessary in aid of its jurisdiction or to protect or effectuate its judgments[.]" Ga. Const. of 1983, Art. VI, Sec. I, Par. IV. Based on that provision, our Supreme Court has held that every court has the inherent power to enforce its orders through contempt. *In re Jefferson*, 283 Ga. 216, 217 (657 SE2d 830) (2008). "Contempt of court, in its broad sense, means disregard for or disobedience of the order or command of the court; this also includes the interruption of court proceedings." *In re Herring*, 268 Ga. App. 390, 390-91 (2) (601 SE2d 839) (2004) (physical precedent only).[1] *In re Schoolcraft*, 274 Ga. App. 271, 274 (1) (617 SE2d 241) (2005). ("Criminal contempt involves some form of wilful disrespect toward the court; it may involve intentional disregard for or disobedience of an order or command of the court, or it may involve conduct which interferes with the court's ability to administer justice.").

The record shows that Williams, who represented the Department of Family and Children's Services, was held in contempt after her phone sounded during a dependency hearing before a Clayton County Juvenile Court judge. The dependency

---

[1] Although there was a special concurrence in *Herring*, it went to a separate and distinct point.

hearing transcript shows the judge had just asked one of the children, who was the subject of the dependency, if she had anything to say, and the child had responded "no" when Williams' phone sounded. The judge then questioned "Who's phone is that?", and Williams responded that it was hers and apologized. The judge then stated on the record that she would take the phone and admonished Williams that phones should be turned off in the courtroom.

The dependency hearing resumed and after a pause, the judge announced her ruling concerning the dependency on the record. At that point, the hearing concluded, and the court reporter stopped recording the proceedings. However, it is undisputed that the judge then went on to address the issue of Williams' cell phone sounding during the hearing, and she held Williams in criminal contempt. A written contempt order was filed the same day, in which the judge made a finding that Williams' cell phone rang while the court was receiving evidence and/or testimony, disrupting the proceedings and causing her to have to deal with the matter. The order further noted that notices were posted on the entry doors to the courtroom advising that telephones should be silenced or turned off and that failure to do so could result in contempt. A copy of the sign posted on the door was attached as Exhibit 1 to the order. The order further found that this was not the first time Williams' phone had sounded during a

3

hearing, and that "her behavior demonstrates a pattern of disrespect for the Court and court rules[.]" Williams was ordered to be held in jail for a period of 24 hours, but further provided she could avoid the jail time by paying a $300 fine.

As an initial matter, we note that although the judge has filed a brief as an "appellee" in this appeal, "[t]he judge before whom the allegedly contemptuous conduct occurred is not a 'party' to appellate review of a contempt finding, as is reflected in the style of a contempt case before this Court, i.e., 'In re' and the name of the alleged contemnor. Accordingly, no appellate appearance by the [judge who entered the contempt order] is authorized." *Herring*, 268 Ga. App. at 390 (1). See also *In re Scheib*, 283 Ga. App. 328, 330 (641 SE2d 570) (2007). The judge's appellee's brief is hereby stricken from the record. *Herring*, 268 Ga. App. at 390 (1).

Likewise, we note that Williams has attached an affidavit to her brief on appeal, in which she posits an explanation of why her cell phone was left on. However, parties are directed by our Rules not to attach affidavits or exhibits to their brief on appeal, and we do not consider attachments to briefs that do not appear in the appellate record. Court of Appeals Rule 24 (g) ("Do not attach documents or exhibits to appellate briefs or motions for reconsideration."); *Chastain v. State*, 237 Ga. App. 640, 640 (516 SE2d 362) (1999) ("Parties cannot supplement the record merely by

4

attaching matters to . . . their briefs.) (citation and punctuation omitted). Accordingly, we also strike Williams' affidavit and will not consider it on appeal. See *Boatright v. State*, 192 Ga. App. 112, 115 (5) (385 SE2d 298) (1989) ("[F]actual assertions contained in the parties' briefs unsupported by evidence of record cannot be considered in the appellate process.") (citation omitted).

Turning to the merits, "criminal contempt is a crime in the ordinary sense." *Jefferson*, 283 Ga. at 218. Accordingly, our role is to determine whether, after reviewing the evidence found in the record in the light most favorable to the finding of contempt, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *In re Irvin*, 254 Ga. 251, 256 (2) (328 SE2d 215) (1985); *In re Dillon*, 344 Ga. App. 200, 200 (808 SE2d 436) (2017). Further, although the trial judge has the authority to summarily punish for contemptuous conduct committed in his or her presence, due process requires that such punishment cannot be meted out until the contemnor is given reasonable notice of the charge and an opportunity to be heard. *Dowdy v. Palmour,* 251 Ga. 135, 141-42 (2) (b) (304 SE2d 52) (1983) (adopting due process requirements set out in *Taylor v. Hayes*, 418 U.S. 488 (94 SCt 2697, 41 LE2d 897) (1974)); *In re Sprayberry*, 334 Ga. App. 571, 573 (1) (779 SE2d 732) (2015) (judgment of contempt reversed where record shows that

5

trial judge did not afford attorney held in contempt a "meaningful opportunity to be heard"); *Coleman v. State*, 269 Ga. App. 827, 827-28 (605 SE2d 424) (2004) (same). That is because of the "heightened potential for abuse posed by the contempt power." *Taylor*, 418 U.S. at 500.

Although the juvenile court judge entered a summary order setting out the basis for the finding of contempt, the order did not include any finding that Williams was given an opportunity to speak on her own behalf or attempt to explain her actions before she was found in contempt. And because there is no transcript of the contempt hearing, we cannot determine for ourselves whether Williams was afforded any meaningful opportunity to be heard. Because the record does not show that Williams was extended the minimum requirements of due process of law, the judgment of contempt must be reversed. *Dowdy*, 251 Ga. at 141-42 (2); see also *In re Siemon*, 264 Ga. 641, 641-42 (2) (449 SE2d 832) (1994); *Maples v. Seeliger*, 165 Ga. App. 201, 201-02 (1) (299 SE2d 906) (1983).

*Judgment reversed. Barnes, P. J., and Reese, J., concur.*