**FOURTH DIVISION**
**BARNES, P. J.,**
**REESE and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 30, 2022**

# In the Court of Appeals of Georgia

A22A0608. IN RE FRANCYS JOHNSON.

BARNES, Presiding Judge.

Attorney Francys Johnson appeals from a criminal contempt order entered by Judge Michael T. Muldrew of the Superior Court of Bulloch County. For the reasons that follow, we reverse.

The following circumstances culminated in the contempt holding. While presiding over the second day of an immunity-from-prosecution hearing in a felony murder case,[1] Judge Muldrew determined that Johnson, the lead defense lawyer, was in contempt of court for failing to heed his demands to be handed a notebook that the judge's assistant had provided to Johnson. The judge had intended for his assistant

---

[1] In addition to felony murder, the defendant was charged with multiple other crimes.

to give the notebook to the prosecutor, not to defense counsel. When the judicial assistant gave Johnson the notebook, Johnson and the other defense lawyers thought that the notebook contained certain school records that the prosecution had provided the judge the previous day for an in camera inspection. Upon reviewing the contents of the notebook, however, defense counsel discovered that the notebook contained emails between their client and others, which emails had been sent and received by their client while he was being held in jail awaiting trial.

This was significant, defense counsel believed, because those emails had not been provided to defense counsel during discovery, yet the prosecution had provided them to the trial judge, ex parte, without defense counsel having any knowledge of their existence. When the hearing recommenced (at 9:00 that morning), Judge Muldrew did not mention to the defense what had occurred. The judge instead sent his judicial assistant to give the notebook back to the prosecution.

The contempt ruling came about toward the end of the morning session. Judge Muldrew announced that he would be recessing the hearing, during which time he would be attending a funeral. Johnson asserted, "I have one more thing we need to put on the record before we break," but in light of time constraints, "we can put it on the record afterwards, but I'm going to give [a notebook] that has been given to us by

2

[Judge Muldrew's judicial assistant] to the Clerk to hold for a chain of custody, and then we'll address it when we come back." The judge responded, "Well, hand me that because [my judicial assistant] gave it to the wrong people." When Johnson again asserted that he would instead hand the notebook to the clerk, the judge admonished, "[Y]ou're going to go to jail if you don't hand that to the bailiff." Without affording Johnson an opportunity to be heard, Judge Muldrew commanded the bailiff(s) to take Johnson into "that room" and bring back the notebook. The bailiff(s) complied, returned to the courtroom without Johnson, and handed the notebook in question to the judge. The judge announced, "I will hand it to the clerk." Before finally recessing the hearing, the judge revealed, "Johnson is going to stay in there until I come back at 2:00, and we may address it then or we may address it later."

During the recess, the defense lawyers filed motions for Judge Muldrew's recusal from both the contempt matter and the underlying criminal (felony murder) case. Later that day, at 4:59 p.m., Judge Muldrew entered the order now on appeal, stating:

> [This felony murder] case came before the Court for an immunity hearing on September 23, 2021. At the immunity hearing Francys Johnson, counsel for the Defendant, was directed to turn over a notebook to the court that was provided to defense counsel in error. Mr.

Johnson refused and was summarily found in direct criminal contempt of court, and was removed from the courtroom by bailiffs and incarcerated in a holding cell at the courthouse. Prior to the court being able to hold a hearing on the contempt Mr. Johnson filed a Motion to Recuse in both the [felony murder] case and in the contempt matter. [I]t is hereby ordered that Francys Johnson is to be released from custody immediately upon the entry of this order pending a hearing on the Motion to Recuse.[2]

---

[2] Several months after this appeal was docketed, Johnson's counsel filed in this Court an "Extraordinary Motion to Vacate Order of Contempt," representing that a senior judge (who had been appointed to preside over the recusal matter, due to the voluntary recusal of all remaining judges of the Ogeeche Judicial Circuit) has since ruled to recuse Judge Muldrew from the case. Attached to that motion is an "Order on Defendant's Motion to Recuse Trial Judge" detailing multiple ways that Judge Muldrew's rulings and conduct – including his handling of the notebook situation – amounted to the appearance of bias against the defendant in the felony murder case and against the defendant's lawyers. The motion argues that because Judge Muldrew has thus been recused, the contested contempt order entered by Judge Muldrew is void and should be vacated.

"We cannot consider factual representations in [an appellate motion] which [facts] do not appear in the record." *Crewe Acquisitions v. Kendrick*, 351 Ga. App. 624, 626, n.5 (832 SE2d 442) (2019); see generally *In re Williams*, 347 Ga. App. 189, 191 (818 SE2d 260) (2018). And at any rate, as we explain in Division 2, infra, the appellate record establishes on other grounds that the criminal contempt adjudication cannot stand. Therefore, Johnson's "Extraordinary Motion to Vacate Order of Contempt" is dismissed as moot.

Johnson challenges the propriety of the contempt adjudication.[3] Procedurally, he contends that he was denied due process. Substantively, he contends that the finding of contempt lacked the requisite quantum of evidentiary proof; that in seeking to hand the notebook to the clerk to preserve the record and the chain of custody, he was merely doing his job and zealously representing his client; and that the record does not show that he made any attempt to thwart justice, particularly since the trial judge himself gave the notebook – as Johnson puts it – "to the very same clerk for the very same reasons" after the notebook was taken from Johnson by the bailiff. Johnson posits, "Had the notebook not been inadvertently given to 'the wrong people,' the defense may never have known of its existence until trial."[4]

---

[3] See generally *In re Hughes*, 299 Ga. App. 66, 67 (1) (681 SE2d 745) (2009) (explaining that "because of the present and possible continuing adverse collateral consequences [the attorney] may suffer as a result of her contempt of court conviction, her appeal of that conviction is not moot"); and see generally *Mondy v. Magnolia Advanced Materials*, 303 Ga. 764, 772 (2) (b) (815 SE2d 70) (2018) ("A decision by a trial judge to hold someone in contempt of court. . . is not just 'administrative'; it is a ruling that has substantive consequences for the contemnor, which may include . . . incarceration, as well as collateral consequences such as professional discipline.").

[4] See generally *In re Jefferson*, 283 Ga. 216 (657 SE2d 830) (2008) (articulating a more complete standard for contempt in the context of courtroom advocacy).

1. As an initial matter, we note that Johnson alluded in his "Extraordinary Motion to Vacate Order of Contempt"[5] that Judge Muldrew failed to fully comply with governing Uniform Superior Court Rule (USCR) 25.3.[6] See *Mondy v. Magnolia Advanced Materials*, 303 Ga. 764, 766 (2) (815 SE2d 70) (2018) ("The formal procedures governing recusal of superior court judges are found in USCR 25.") (citation and punctuation omitted). Johnson did not raise such issue, however, in his enumeration of errors; hence, we do not reach that issue. See generally *Mims v. State*, 310 Ga. 853, 854, n. 2 (854 SE2d 742) (2021) (reiterating that "an appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of errors") (citation and punctuation omitted); *Hoke v. State*, 326 Ga. App. 71, 74 (2) (755 SE2d 876) (2014) (noting that the recusal issue was waived where not timely presented).

We turn to the claims of error duly raised by Johnson in this appeal.

_____

[5] See footnote 2, supra.

[6] Specifically, in his motion, Johnson quoted language from *Mondy*, 303 Ga. at 777 (4): "Assuming [the appellant's] motion to recuse was properly presented to the trial judge, the judge had a clear duty to temporarily cease acting upon the merits of the contempt proceeding, and the judge therefore erred in entering the contempt order before the recusal motion had been decided."

2. Johnson's procedural attack, that the contempt ruling was made without due process, is supported by longstanding precedents.

Decades ago, in *Dowdy v. Palmour*, 251 Ga. 135 (304 SE2d 52) (1983), the Supreme Court of Georgia recited that "a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, *after affording the contemnor an opportunity to speak in his or her own behalf*, to announce punishment summarily and without further notice or hearing." (Emphasis supplied.) Id. at 141-142 (2) (b). Thereafter, in *Ramirez v. State*, 279 Ga. 13 (608 SE2d 645) (2005), the Supreme Court instructed:

> The procedures that a trial court must follow to hold a person in contempt depend upon whether the acts alleged to constitute the contempt are committed in the court's presence (direct contempt) or are committed out of the court's presence (indirect contempt). If the contempt is direct, a trial court has the power, *after affording the contemnor an opportunity to speak in his or her own behalf*, to announce punishment summarily and without further notice or hearing.

(Footnotes and punctuation omitted; emphasis supplied.) Id. at 14 (2). More recently, in *Cousins v. Macedonia Baptist Church of Atlanta*, 283 Ga. 570, 575 (1) (662 SE2d 533) (2008), our high Court reiterated:

7

Though a court clearly has the authority to hold a party summarily in contempt when necessary to preserve order in the courtroom, even such summary contempt power *requires* that the contemnor be "afford[ed] … the opportunity to speak in his or her own behalf." *Dowdy v. Palmour*, 251 Ga. 135, 142 (2) (304 SE2d 52) (1983). Accord *Taylor v. Hayes*, 418 US 488, 498 (II) (94 SCt 2697, 41 LE2d 897) (1974) ("[e]ven where summary punishment for contempt has been imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.' [Cit.]").

(Emphasis supplied.) *Cousins*, 283 Ga. at 575 (1). Similarly, this Court has recognized,

[A]lthough the trial judge has the authority to summarily punish for contemptuous conduct committed in his or her presence, due process requires that such punishment cannot be meted out until the contemnor is given reasonable notice of the charge and an opportunity to be heard. That is because of the heightened potential for abuse posed by the contempt power.

(Citations and punctuation omitted.) *In re Williams*, 347 Ga. App. 189, 191-192 (818 SE2d 260) (2018).

Here, the trial judge imposed upon Johnson the sanction of jail time, without having first afforded him meaningful opportunity to defend himself against the trial judge's conclusion that his conduct was contemptuous. See *Coleman v. State*, 269 Ga.

8

App. 827, 827-828 (605 SE2d 424) (2004) (holding that even though the appellant had refused to comply with the trial judge's repeated demand, summary contempt adjudication was not authorized because the appellant was not given an opportunity to speak or explain why he should not be held in contempt). We note that the hearing transcript captures Johnson's subsequent utterances, "I want to put it on the record . . . I want a chain of custody about it . . . I want a chain of custody of custody about it[.]" But by that point, the judge had already meted out punishment, and Johnson was accordingly being ushered from the courtroom and to a cell by the bailiff(s). The transcript shows that when the bailiff(s) returned to the courtroom and the judge regained possession of the notebook, Johnson's co-counsel urged that "Johnson be released to return to representation." The judge denied the request, responding that "[w]hat he did was contempt of court" and that Johnson "will have to remain in there until such time as he purges himself from his contempt. But right now, I've got a funeral I have to go to." The order entered hours later recounts the trial judge's contemplation of a contempt hearing for Johnson, but by then (and as the same order reflects), Johnson had already been incarcerated.

"Contempt is a drastic remedy which ought not to deprive one of his liberty unless it rests upon a firm and proper basis." (Citations and punctuation omitted.)

9

*Ford v. Ford*, 270 Ga. 314, 316 (509 SE2d 612) (1998). Here, because the record shows that requisite due process was not extended to Johnson, the contempt ruling (whether oral[7] or written) was not authorized and is hereby reversed. See *Cousins*, 283 Ga. at 575 (2) (reversing summary adjudication of criminal contempt because, inter alia, the appellant was given no opportunity to respond to or defend himself against the trial judge's determination of contempt); *Ford*, 270 Ga. at 316 ("Because the minimum requirements of due process were not extended to appellant in this case, the [criminal] contempt judgment must be set aside."); *In re Williams*, 347 Ga. App. at 192 (reversing the direct criminal contempt judgment, where the record did not show that the appellant-attorney was extended the minimum requirements of due process of law – i.e., "an opportunity to speak on her own behalf or attempt to explain her actions before she was found in contempt"); *In re Sprayberry*, 334 Ga. App. 571, 573 (1) (779 SE2d 732) (2015) (reversing contempt judgment, where the record

_____

[7] See OCGA § 5-6-34 (a) (2) (authorizing appeals to be taken to the Court of Appeals from "[a]ll judgments involving . . . contempt cases"), (d) (providing, in pertinent part, that "[w]here an appeal is taken under any provision of subsection (a), (b), or (c) of this Code section, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere").

10

showed that the trial judge did not afford the attorney held in contempt a "meaningful opportunity to be heard"); *In re Hughes*, 299 Ga. App. 66, 71 (2) (681 SE2d 745) (2009) (finding that "the trial court erred by immediately imposing punishment and not providing [the attorney] the opportunity to speak in her own behalf"); *Coleman*, 269 Ga. App. at 827-828 (reversing summary contempt judgment, where the trial court sentenced the appellant without giving him an opportunity to speak or explain why he should not be held in contempt).

3. Given our holding in Division 2, supra, we do not reach the remainder of Johnson's arguments.

*Judgment reversed. Reese and Markle, JJ., concur. Dillard, P.J., and Mercier, J., recused.*